## Fanning *v.* Apawana Golf Club, Appellant.

Argued March 5, 1951.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Louis Wagner,* with him *Walter W. Harris,* for appellants.

*James W. Scanlon,* with him *William J. Garvey,* for appellee.

OPINION BY ROSS, J., July 19, 1951:

The sole question in this workmen's compensation case is whether at the time of his accidental injury the claimant was an employe of the defendant. The compensation authorities, affirmed by the court below, found that he was, and the defendant and its insurance carrier took this appeal.

At the time of the accidental injury, the defendant, a non-profit corporation, owned and operated a golf course in Lackawanna County. It had a number of members who used its course, but the general public was also invited to play on the course upon payment of a greens fee. In June 1947 the claimant,[1] John Fanning, then aged twelve, and his brother James, accompanied John F. Nealon, a club member, when the latter played golf. Nealon testified that the boys stated that they would like to work as caddies; that he asked Stanley Wykowski, a director of the defendant and chairman of its greens committee, if the boys might work as caddies and that Wykowski replied, "Well, John, I don't see any reason why they can't as long as they get along with the other boys here and behave themselves." Pursuant to the authority so given, the claimant went to the golf course and worked as a caddy

---

[1] Because of claimant's minority, the claim petition was filed on his behalf by his mother, Martha Fanning.

"nearly every day" until he was injured—a period of about a month.

Elwell P. Dietrick, president of the defendant, testified that it was the policy of the club to discontinue caddy service, but admitted that this policy was motivated primarily by a desire to save premiums on workmen's compensation policies. Notwithstanding this avowed policy, the testimony discloses that there were at most times "about ten" caddies available for use; that the officials of the club were aware of the presence of the caddies, and in fact maintained a "canopy" beneath which the boys ate their lunches and made their headquarters while awaiting a turn to work; that Wykowski interceded on behalf of the Fanning boys when they had a dispute with a "big boy from Throop" who handled the matter of priority of work, and from that time on both Fanning boys were permitted to caddy in rotation. On July 30, 1947, while John Fanning was caddying for one Dempsey on the golf course of the defendant club, he was struck in the eye by a ball hit by another player. The injury necessitated the removal of the boy's right eye and resulted in a permanent disfigurement of his face.

The relation of master and servant, of course, must exist to entitle an injured claimant to compensation. This relation does exist, however, where the employer has the right to select the employe, the power to remove and discharge him, and to direct both what work shall be done and the way and manner in which it shall be done. *Beaver v. G. W. Boyd Co.,* 106 Pa. Superior Ct. 24, 161 A. 900. With regard to the power to direct the way and manner of doing the work it is important to observe that the question is not whether the employer has actually *exercised* control, but whether he has the *right* to control. *Feller v. New Amsterdam Cas. Co.,* 363 Pa. 483, 70 A. 2d 299. The Workmen's Compensation Act was not intended to limit hiring con-

tracts to *express* contracts, to the exclusion of that class of contracts which arise by *implication* of law where circumstances appear which according to the ordinary course of human dealings show a mutual intention to contract. *Reitmyer v. Coxe Bros. & Co., Inc.,* 264 Pa. 372, 107 A. 739; *James v. Shapiro,* 135 Pa. Superior Ct. 550, 5 A. 2d 815. These principles of law are well established and determine in claimant's favor the issue of his employment by the defendant.

The defendant club owned and operated the premises upon which claimant and the other caddies worked. By virtue of this fact, the defendant had the *right* to select the employe (by refusing entry to those it did not want as caddies); the *right* to remove and discharge the employe (by ejecting a caddy from its land); and the *right* to direct both what work should be done and the manner of doing it (enforceable because of the power to exclude or eject from the land). The exercise of control is, of course, evidence of the right to do so; but where, as here, that right is clear, such evidence is surplusage. The defendant did exercise as much control as was necessary under the existing circumstances; that it did not exercise more control is not critical so long as the right to exercise such control was present. The circumstances surrounding the dealings between the minor claimant and the Apawana Golf Club make it a reasonable assumption that a contract of employment existed between them by tacit understanding. The fact that the players for whom Fanning caddied rather than the defendant paid his wages does not militate against this conclusion. Section 104 in defining an employe as one who performs services for another "for a valuable consideration" does not specify that any particular person shall pay this consideration, and its language is not to be construed as conditioning liability to meet a claim for compensation on payment of wages by the person against whom

the claim is made, or on the obligation to pay wages. *Atherholt v. Stoddart Co.*, 286 Pa. 278, 133 A. 504; *Hattler v. Wayne County*, 320 Pa. 280, 182 A. 526.

*Balinski v. Press Publishing Co.*, 118 Pa. Superior Ct. 89, 179 A. 897, and *Walters v. Kaufmann Department Stores*, 334 Pa. 233, 5 A. 2d 559, cited by the appellants, are clearly distinguishable from the case before us. In the *Balinski* case we held that a newsboy who sold its newspapers was not an employe of the defendant and, therefore, not entitled to compensation. In that case the defendant presumed to exercise more control over the conduct of the alleged employe than did the present defendant; but it is clear. that this control was not exercised as a matter of right. The crux of the *Balinski* case is to be found in the following language from the opinion, at page 95: "The only control which Shanahan [representing the defendant] had over the decedent [the alleged employe] or any other of the newsboys was to refuse to sell them any newspapers if they would not respect the usual customs or understandings prevalent among newsdealers. It is also a fact that although Shanahan could refuse to sell papers to an offending newsboy, that very newsboy might obtain papers elsewhere which he could sell wherever he might see fit to expend his energies." In contrast, if the present defendant saw fit to exclude a boy from its premises, his work as a caddy at the Apawana Golf Club was effectively terminated.

In the *Walters* case the alleged employe was a demonstrator of kitchen products for the Carrollton Steel Company and acted in that capacity in the defendant's store. The agreement between the store and the steel company reserved to the latter complete control over the alleged employe with respect to selection, discharge, and the manner in which her work should be done. In these circumstances, the Supreme Court found that plaintiff was not an employe of the defendant store.

It is true that in the *Walters* case the defendant owned the premises on which the work was performed, but it is also true that by its agreement with the steel company it had abdicated the right to control inherent in that circumstance. There is no such agreement in the present case.

Quoting from *Hertzog v. Hertzog*, 29 Pa. 465, at page 469, "A party who relies upon a contract must prove its existence; and this he does not do by merely proving a set of circumstances that can be accounted for by another relation appearing to exist between the parties", the defendant contends that the circumstances here show that the claimant was merely a licensee upon the premises of the defendant. With this contention we do not agree. A licensee is one who is upon the land of another solely for the licensee's own purpose, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom. *Restatement of Torts,* sec. 331, comment a. It is too clear for argument that having caddies available for members and non-members furthered the business interest of the defendant golf club.

The compensation authorities found that the minor claimant was an employe of the defendant. Having examined the evidence in the light most favorable to the claimant (*Hockenberry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536) and giving him the benefit of inferences reasonably deducible therefrom (*Schubert v. Oswald & Hess Co.,* 161 Pa. Superior Ct. 309, 54 A. 2d 113), as we are required to do, we are of the opinion that this finding was supported by sufficient competent evidence and, therefore, is conclusive.

Judgment affirmed.