## Barnett *v.* Bowser, Appellant.

Argued March 24, 1954. Before Ross, Gunther, Wright, Woodside and Ervin, JJ. (Rhodes, P. J. and Hirt, J., absent).

*Harris J. Latta, Jr.,* with him *Paul E. Beaver* and *J. William McIntyre,* for appellant.

*Don C. Reiley,* with him *D. Cress Reiley* and *Reiley & Reiley,* for appellees.

Opinion by Ross, J., July 13, 1954:

In this workmen's compensation case a claim petition was filed by the widow of Meade J. Barnett, who was fatally injured while in the employ of the defendant, W. C. Bowser. The referee disallowed compensation and the Board, while affirming the referee's findings of fact, set aside his conclusions of law and made an award. The defendant's exceptions were overruled by the court below and judgment was entered against him. From that judgment, the defendant has appealed to this Court.

Section 104 of the Workmen's Compensation Act, 77 PS sec. 22, provides in part as follows: "The term 'employe', as used in this act is declared to be synonymous with servant, and includes—All natural persons, who perform services for another for a valuable consideration, *exclusive of persons whose employment is casual*

*in character and not in the regular course of the business of the employer . . ."* (Italics supplied.) The defendant admits that there was a contract of employment between him and Barnett, that Barnett was injured within the scope and course of his employment; and that the claimant is entitled to compensation unless her husband's employment was *both*[1] casual and not in the regular course of defendant's business. Consequently, the only question involved in this case is whether the work in which Barnett was engaged when he met with the accident which resulted in his death was casual in character and not in the regular course of the business of the defendant, and this is a question of law. *Boyd v. Philmont Country Club,* 129 Pa. Superior Ct. 135, 195 A. 156.

Our first inquiry is whether Barnett's employment was casual and this inquiry is controlled by the principles as set forth by Mr. Justice (now Chief Justice) HORACE STERN in *Cochrane v. William Penn Hotel,* 339 Pa. 549, 16 A. 2d 43, at page 552: "As to what constitutes an employment casual in character, it is obvious that the term 'casual' is not capable of scientific definition. Involved in it are the ideas of fortuitous happening and irregularity of occurrence; it denotes what is occasional, incidental, temporary, haphazard, unplanned. Applying it as practically as possible to the subject of employment, it may be said in general that if a person is employed only occasionally, at comparatively long and irregular intervals, for limited and temporary purposes, the hiring in each instance being a matter of special engagement, such employment is casual in character. On the other hand, even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered

---

[1] *Fedak v. Dzialdowski,* 113 Pa. Superior Ct. 104, 172 A. 187.

as casual if the need for the work recurs with a fair degree of frequency and regularity, and, it being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise. Even if there be but a single or special job involved, this does not conclusively stamp the employment as casual. If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual . . ."

In *Deviney v. J. H. France Fire Brick Co.*, 339 Pa. 553, 16 A. 2d 45, the employer company purchased an old brick plant and in order to put it into shape to manufacture fire brick engaged upon a large-scale program of reconstruction and repairs, together with the building of new sheds and kilns. Claimant, a carpenter, was one of 25 men hired to do the work. The entire project required about six months' work, and claimant would have been employed for that length of time had he not suffered a serious accident about six days after he started to work. The Supreme Court held claimant's employment not casual, stating, inter alia, at pages 555-556 : "Here the enterprise in connection with which claimant was employed was large in scope. It was not of an emergency or incidental nature but part of a planned program." In *Parisi v. Freedom Oil Co.*, 150 Pa. Superior Ct. 260, 27 A. 2d 255, at page 264 we stated : "The project which defendant undertook, and in which claimant was engaged as an employee, was not merely an incidental job or an emergency repair, but it was a premeditated, planned, and extensive undertaking related to the conduct of its business. As the facts disclose, land was purchased, and the buildings thereon were to be demolished, in whole or in part, and a garage

for defendant's trucks erected. More than two months were required to complete the work. Even if the demolition and construction work, related as it was to defendant's business, was not in its regular course or a part of the normal conduct of such business, it cannot be said that the employment of claimant and the others engaged in such work was casual. It did not come about by chance or fortuitously."

In this case, the defendant purchased an "old station" from the Huntingdon and Broad Top Railroad. With the help of one Patterson he dismantled the building and moved the materials from their then-location to property owned by defendant at Stonerstown. It was his intention to use the lumber from the old station "to build a new building". By August 11, 1952 the "outside frame" of the new building had been erected by him and Patterson.

Shortly before August 11, 1952 the defendant discovered that "going ahead with the girder and cutting the roof" was "just a little bit complicated for Mr. Patterson and myself . . . we don't know too much about carpenter work". At that time defendant hired Barnett to start work on August 11, 1952. The claimant heard the conversation between her husband and defendant when the former's duties were discussed. It was her understanding that decedent was to be "employed generally around the building", and that his employment was to continue until the building was completed. The following is a part of defendant's testimony on direct examination: "Q. Did you hire him [decedent] just to set the girders and work on the roof, or did you have other work planned for him; what was your arrangement, if any? A. Well, I just can't recall of giving him any definite time as to how much work there would be. We wanted to work on this building and push it along as fast as possible on days I didn't have work. On days I

22

had work then I had to do my shop work." And later, still on direct examination: "Q. Is it your testimony then that you employed Mr. Barnett to assist you and Mr. Patterson in any work about that building that you asked him to do? A. That's right."

Prior to the time when Barnett was engaged, the defendant and Patterson worked only when defendant had a day off from his employment with the railroad. The defendant could not state whether or not that sporadic method of construction was intended to continue after claimant's decedent started to work. It is a fair inference that it was not. The work to be done by decedent was too complicated for Patterson and the defendant and, as noted above, the defendant wanted to "push it [work on the building] along as fast as possible". Under such circumstances the only reasonable assumption is that Barnett's work was intended to be reasonably steady.

There would appear to be no direct evidence as to the time which would be required to complete the structure. It is clear, however, that claimant's husband had been employed for the period of time required to erect the building "whether it took three weeks or three months or three years". It appears that although the "outside frame" had been erected by August 11, 1952, the building had not been completed as of the date of the hearing, January 2, 1953. There is in the record no indication that the project had been abandoned but on the contrary, defendant stated, "I was going to start a little general store; that's my plans yet."

In our opinion, Barnett's employment was not casual. The work was not of an emergency or incidental nature, but rather represented a planned project, and the tenure of the service necessary to complete it and for which the employment was to continue was of "fairly long duration".

The defendant contends that *Blake v. Wilson*, 268 Pa. 469, 112 A. 126, requires us to stamp as casual the employment of claimant's decedent. We do not agree. In the *Blake* case the employe was by occupation a school teacher. During a "temporary suspension of the schools" he was engaged by the owner of a farm to complete a silo. What remained to be done was to "roof the structure and paint it". While so engaged the employe met with an accident which resulted in his death. The Supreme Court held that the employment was casual, stating at pages 476-477: "The character of his employment may well be regarded as casual considering not only that it was out of the line of his regular employment, and occurred only because of the temporary suspension of that employment, but as well because of the accident, or whatever it was, that had occasioned the suspension of the work on the silo that left it incomplete, and the very limited time that would be required to complete the work for which he engaged. . . . An employee's engagement is casual in character when it comes about by chance, fortuitously, and for no fixed duration of time. In this case it was the concurrence of two fortuitous events that gave rise to the employment, the expiration of the school term and the convenience of the employer for a resumption of work on the silo. There is nothing in the facts to warrant a belief that such contingency was foreseen."

In the case at bar, the decedent "was a carpenter by trade" so that the work he engaged to do for the defendant was not "out of the line of his regular employment". It can hardly be said to be an "accident" nor unforeseen that the services of a carpenter would be required in the erection of a building. And the project planned by the instant defendant would not require only "a very limited time" to complete; all the evidence is to the contrary.

24

In view of our holding that the employment of the decedent was not casual, it is not necessary to reach the question of whether such employment was in the regular course of business of the employer.

Judgment affirmed.