## Barr *v.* B & B Camper Sales.

324

Argued December 7, 1972, before Judges CRUMLISH, JR., WILKINSON, JR., and MENCER, sitting as a panel of three.

*John McD. Sharpe, Jr.,* with him *Sharpe and Sharpe,* for appellant.

*Thomas M. Painter,* with him *Ullman and Painter,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 7, 1973:

This is an appeal from a decision of the Workmen's Compensation Appeal Board granting compensation benefits to the claimant-appellee.

The owner of a camper delivered it to B & B Camper Sales,[1] appellant, for the dual purpose of replacing a refrigerator and servicing an apparently defective heating system.

---

[1] B & B Camper Sales is a business name; the party in interest is one Billie A. Bard, who is the owner and operator of B & B Camper Sales.

Appellee's husband sustained fatal burns on September 21, 1967, when the camper suddenly and without apparent explanation exploded.

After the accident and ensuing death of her husband, Mrs. Barr filed a fatal claim petition with the Bureau of Workmen's Compensation. The referee after a hearing disallowed the claim. Claimant then appealed to the Workmen's Compensation Board which reversed the referee and awarded the benefits sought.

B & B Camper Sales appealed from that decision directly to this Court under the Act of February 8, 1972, P. L.      (No. 12).

Appellant contends that the Board erred in allowing benefits because (1) the deceased was not his employe, and (2) even assuming that decedent was an employe, his role was that of a salesman, no substantial evidence appears on the record which would cause the Board to conclude that he suffered the fatal injury while working in his designated capacity.

We reject the contentions of appellant and affirm the Workmen's Compensation Appeal Board.

Before turning to the particular facts in this case, we again emphasize this Court's scope of review in a Workmen's Compensation case. Unless the Board has committed an *arbitrary and capricious abuse of discretion or error of law,* it is not within the province of this Court to reverse its decision even though the Court, on the same record, may have reached a different result. *Stump v. Follmer Trucking Company,* 4 Pa. Commonwealth Ct. 110, 286 A. 2d 1 (1972).

To qualify for compensation under the Workmen's Compensation Act, the claimant must first sustain the burden of proving that at the time of the injury the deceased was an employe of the appellant. *J. Miller Co. and Selective Insurance Company v. Samuel E. Mixter,* 2 Pa. Commonwealth Ct. 229, 277 A. 2d 862 (1971); *Herman v. Kandrat Coal Co.,* 205 Pa. Superior Ct. 117, 208 A. 2d 51 (1965).

An "employe" as defined by the Workmen's Compensation Act is synonymous with "servant."[2] Thus, there is the requirement that a master-servant relationship exist before he qualifies for benefits. A master-servant relationship exists within the meaning of the Act when it is established that a contract of employment, express or implied, was in being at the time of the injury. *Harris v. Seiavitch,* 336 Pa. 294, 9 A. 2d 375 (1940).

The relevant facts in this case do not lend themselves to an easy disposition of this main issue.

The decedent was a retired railroad employe, whose initial contact with appellant came when he purchased a camper from the appellant. Subsequently, the decedent returned periodically to have his camper serviced.

Decedent was a regular visitor between 1965 and 1967. Often, while at B & B Camper Sales' location, he pitched in and helped Billie Bard, the principal of B & B, where his efforts could be utilized. It appears that a genuine friendship arose between the two. It is important to note that the deceased at no time during most of that two-year period received compensation for what appears to have been voluntary service.

However, in April 1967, the relationship between the deceased and appellant focused into a different posture. The deceased's visits and service activities increased in number. He made repairs to campers and trailers; demonstrated campers and trailers; travelled to secure new campers and trailers; operated the sales lot while appellant was on vacation and at night when appellant was not available; and purchased supplies for appellant. In addition, he had keys to the office and authority to draw checks when appellant, for any of many reasons, was not on the premises. During the

---

[2] Workmen's Compensation Act of June 2, 1915, P. L. 736, Sec. 104 as amended, 77 P.S. §22.

period April 1967 through September 21, 1967, deceased was paid $390.00 by appellant.

These factors suggest an employer-employe relationship by implied contract for compensation, although it may not fit squarely within the usual master-servant concept. However, we find of greatest significance as the single most important factor in determining the existence of an employer-employe relationship, the existence of the control or right of control of the work to be done and the manner of performance. *Potash v. Bonaccurso,* 179 Pa. Superior Ct. 582, 117 A. 2d 803 (1955).

In *Fanning v. Apawana Golf Club,* 169 Pa. Superior Ct. 180, 184, 82 A. 2d 584 (1951), the Superior Court of Pennsylvania held that a caddy was an employe of the defendant golf club even though he was paid by the participating members of the club. The court's discussion of the club's right to control the caddy and its bearing on the legal conclusion deserves prime consideration here. "The defendant club owned and operated the premises upon which the claimant and other caddies worked. By virtue of this fact, the defendant had the right to select the employe (by refusing entry to those who it did not want as caddies) ; the right to remove and discharge the employe (by ejecting caddy from its land) ; and the right to direct both what work should be done and the manner of doing it (enforceable because of the power to exclude or reject from the land). The exercise of control is, of course, evidence of the right to do so, but where, as here, that right is clear, such evidence is surplusage. The defendant did exercise as much control as was necessary under existing circumstances; that it did not exercise more control is not critical as long as the right to exercise such control was present. . . ."

The record clearly discloses that appellant in this case exercised sufficient control over the activity of

decedent to establish a master-servant relationship. Under the appellant's direction, decedent travelled to Ohio to obtain new campers and trailers. He performed various tasks around the sales lot, and often was the only person available to display the campers and trailers to prospects. To suggest, as appellant does, that the decedent performed these services gratuitously and without direction from the appellant asks this Court to simply ignore the crucial facts of life, to wit, that compensation was paid to the decedent, and to believe that the decedent, without instructions of any kind, was cognizant of multitudinous duties required to service and supervise the sales and repair operation of the lot.

The facts indicate (and this in no way vitiates the legal import of the working relationship) that there existed a personal relationship between appellant and decedent. A master-servant relationship was another facet of the circumstances and the Board quite properly concluded that the tragedy herein was compensable.

Appellant's second contention is that decedent's employment, if indeed it existed, was limited to sales. It argues from there that being so, a fatal injury during repairs was outside the scope of his employment and hence was not compensable. While this advance taxes our credulity we will discuss it briefly before dismissing it as being without merit.

The Workmen's Compensation Act of June 2, 1915, P. L. 736, §301(c), as amended, 77 P.S. §411, defines "injury by accident in the course of his employment" as ". . . all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the

control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

Appellant admitted that the decedent performed various tasks in and around the sales lot. The decedent helped appellant to remove a refrigerator from the very camper which later in the same day was the scene of his unfortunate fatal injury. Appellant's effort to distinguish between the decedent, the salesman, for which he was compensated, and decedent, the all-around handyman on various appellant-assigned details, which appellant urges he performed gratuitously, is not persuasive.

The Board correctly decided that the decedent was injured while performing duties required of him in the course of his employment. Accordingly, we issue the following

### ORDER

AND NOW, this 7th day of February, 1973, the Order of the Workmen's Compensation Appeal Board is hereby affirmed.