Stewart, et al., Appellants, *v.* Uryc.

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David Kanner*, for appellants.

*Charles A. Shaffer*, with him *Flanagan, Doran, Biscontini & Shaffer*, for appellee.

OPINION BY HOFFMAN, J., December 1, 1975:

The narrow issue presented by this appeal is whether the facts of record establish that the minor plaintiff was an employee of the defendant-appellee at the time he was injured. The lower court held that the record revealed the existence of an employer-employee relationship, thus precluding the minor plaintiff from suing in trespass.[1] Consequently, the court granted appellee's motion for summary judgment, pursuant to Rule 1035, Pa.R.C.P.

---

1.   See, Workmen's Compensation Act, §481: "... The liability of an employer under this act shall be exclusive and in place of any and all other liability . . ." Act of June 2, 1915, P.L. 736, art. III, §303, as amended, December 5, 1974, P.L. 782, No. 263, §6, eff. in 60 days; 77 P.S. §481.

The basic facts are not in dispute. Appellee, as part of his private sanitation business, contracted with firms to pick up and empty trash containers. In the summer of 1966, minor plaintiff began to accompany appellee two or three times a week on various jobs. When appellee's truck approached a container, both he and the minor plaintiff would get out of the truck to "size up the container." Minor plaintiff would then stand on the truck's running board while appellee operated the vehicle. His job was to step off the truck, and tell appellee when to stop, so that appellee could "line up" the truck's platform with the container. On May 26, 1967, as minor plaintiff stepped off the truck, he was pulled under by the wheels and sustained various injuries.

On July 18, 1969, a complaint in trespass was filed, alleging that minor plaintiff's injuries resulted from appellee's negligent operation of his truck. An attorney for appellee's insurance carrier entered an appearance on behalf of appellee on September 10, 1969. By agreement of the parties and their respective counsel, depositions of the minor plaintiff and appellee were taken on December 16, 1969. Subsequently, on April 22, 1970, counsel for the insurance carrier filed a petition to withdraw his appearance, alleging that the insurance company's contract with appellee did not provide coverage for employees injured in the course of their employment, and that the depositions revealed that minor plaintiff was in fáct an employee. Appellee filed an answer to the petition to withdraw, but the docket entries do not disclose any resolution of the motion. No further action was taken until October 18, 1974, when appellee filed an answer and new matter to the complaint. The answer simply denied the allegations contained in the complaint, and the new matter averred that minor plaintiff's sole remedy was under the Workmen's Compensation Act. On November 20, 1974, appellee filed a motion for sum-

mary judgment which was granted on April 23, 1975. This appeal followed.[2]

The resolution of the instant case hinges entirely on whether minor plaintiff was an employee of appellee. If so, summary judgment was properly entered as minor plaintiff's exclusive remedy would be under the Workmen's Compensation Act; if not, minor plaintiff was free

---

2. Appellee's answer was filed more than five years after the filing of the complaint without either leave of court or permission of counsel for minor plaintiff. Nevertheless, minor plaintiff failed to file preliminary objections. In his brief in opposition to the motion for summary judgment, however, minor plaintiff contended that the new matter contained conclusions of law which did not require a response. In its opinion, the lower court stated: "Since plaintiffs' objections to the answer and new matter have been raised only in the briefs they are not part of the record and cannot be considered at this time."

On May 29, 1975, minor plaintiff petitioned the court below for reargument, alleging that the court erroneously considered appellee's new matter in passing on the motion for summary judgment. The court denied the motion orally in order to enable minor plaintiff to effect a timely appeal from the order granting the motion for summary judgment. The court later placed a memorandum on the record which responded to minor plaintiff's petition for reargument:

"Plaintiffs in this case contend that this court's decision is based on conclusions of law contained in new matter filed by the defendant.

"In its decision, the court did state that plaintiffs could not attack the answer and new matter by way of their brief, but rather the proper means was by way of preliminary objections.

"In arriving at its decision, the court only relied on the complaint, depositions, and the motion for summary judgment, in resolving whether there was a genuine issue as to any material fact. The court found none and granted the motion for summary judgment.

"This is an action in trespass in which a complaint and entry of appearance for the defendant were filed. The late answer improperly filed without court permission or stipulation of counsel, was not considered by the court."

Minor plaintiff now contends that the "defense" of the applicability of the Workmen's Compensation Act cannot be asserted for

262

to pursue his common law remedies and summary judgment was improperly entered. Under §22 of the Act "[t]he term 'employe', as used in this act is declared to be synonymous with servant, and includes—All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer . . ."[3] Before a person

the first time in a motion for summary judgment: ". . . all affirmative defenses in trespass are required to be pleaded and when not pleaded are waived and cannot be raised in a motion to satisfy an adverse judgment." *Matthews v. Malloy*, 217 Pa. Superior Ct. 338, 341, 272 A.2d 226, 228 (1970), citing Rules 1032 and 1045, Pa. R.C.P. It is certainly true that Rule 1045 requires all affirmative defenses to be pleaded under new matter, and Rule 1032 provides, with certain exceptions, that "[a] party waives all defenses and objections which he does not present either by preliminary objection, answer or reply . . ." However, Rule 1032(2) requires that the court dismiss an action whenever "it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . ." This is such a case. If in fact an employer-employee relationship existed, the court below would have no jurisdiction to entertain the instant suit, as the exclusive forum for resolution of the minor plaintiff's claim would be that provided by the Workmen's Compensation Act. Because the defense of lack of subject matter jurisdiction was not waived, appellee could rely on it in support of his motion for summary judgment. The memorandum filed by the lower court precludes our reversing on the basis that the court considered information not properly before it. Thus, the propriety of the summary judgment must be considered on its merits.

3. The Pennsylvania Act does not determine inclusion by reference to the number of employees or the extent of their employment: "In Pennsylvania there is no exclusion of any employer or employee from coverage under the Act based upon the number of workers employed. As long as there is one employee, even when the one employee is engaged on a limited basis, the Act applies, and such an employer is responsible to provide for compensation coverage and through his insurance carrier or personally make payments for injury to that employee." Barbieri, *Pennsylvania Workmen's Compensation*, §404.3 at 9-10 (1975).

can qualify under Workmen's Compensation, therefore, a master-servant relationship must exist. "A master-servant relationship exists within the meaning of the Act when it is established that a contract of employment, express or implied, was in being at the time of the injury." *Barr v. B & B Camper Sales,* 7 Pa. Commonwealth Ct. 323, 326, 300 A. 2d 304, 306 (1973) (footnote omitted). *See also, Brock v. Bowser,* 376 Pa. 209, 102 A. 2d 121 (1954) ; *Harris v. Seiavitch,* 336 Pa. 294, 9 A. 2d 375 (1939); *McManus v. Kuhn,* 194 Pa. Superior Ct. 544, 168 A. 2d 618 (1961) ; *Fanning v. Apawana Golf Club,* 169 Superior Ct. 180, 82 A. 2d 584 (1951) ; *Sechrist v. Kurtz Brothers,* 147 Pa. Superior Ct. 214, 24 A. 2d 128 (1942). Some decisions treat this issue in terms of whether the employee was a "volunteer," in the sense of not performing services for a valuable consideration as required by the Act. See, e.g., *Marcus v. Frankford Hospital,* 445 Pa. 206, 283 A. 2d 69 (1971). Other decisions focus on the traditional tort concept of the master-servant relationship: the right of the employer to control the result of the work and to direct the manner in which the work is done. See, e.g., *Ragano v. Socony Vacuum Oil Co.,* 376 Pa. 271, 101 A. 2d 686 (1954) ; *Potash v. Bonaccurso,* 179 Pa. Superior Ct. 582, 117 A. 2d 803 (1955) ; *Hollen v. Workmen's Compensation Appeal Board and John Dospoy,* 14 Pa. Commonwealth Ct. 209, 321 A. 2d 733 (1974). Despite the differing emphasis of the various decisions, it is apparent that one of the necessary factors to create an employer-employee relationship is the mutual assent of both parties.[4] Whether or not the relationship exists, however,

---

4. The statute creates an exception for persons "whose employment is casual in character and not in the regular course of the business of the employer." This exception is not applicable to the instant case; it is clear that minor plaintiff was assisting appellee in the regular course of his business. It is also clear that the continuous nature of minor plaintiff's assistance makes it impos-

can only be determined by examining the peculiar facts of each case. *Hollen v. Workmen's Compensation Appeal Board and John Dospoy,* supra.

The testimony of both minor plaintiff and appellee in the instant case negates the existence of an express contract of employment. When asked whether minor plaintiff worked for him during the summer of 1966, appellee responded: "Work? I don't understand what you are driving at. You keep saying work, work, work. There was no specified contract that he had to keep. When he had something else to do he would do it." Therefore, an employer-employee relationship was established only if the existence of facts indicate an implied contract: "The Workmen's Compensation Act was not intended to limit hiring contracts to *express* contracts, to the exclusion of that class of contracts which arise by *implication* of law where circumstances appear which according to the ordinary course of human dealings show a mutual intention to contract." *Fanning v. Apawana Golf Club,* supra at 183-184, 82 A. 2d at 585.

The testimony of both parties evidences a very informal relationship. Appellee testified that minor plaintiff had no fixed salary, but "[i]f I had a couple bucks, I would give it to him," and that there were many occasions when minor plaintiff worked for no compensation at all. The following excerpt from the deposition of minor plaintiff is instructive:

"Q. When did you make arrangements with Mr. Uryc you wanted to go for a ride?

"A. The day before.

"Q. How come you tell him the day before you wanted to go out with him on May 26, 1967? What caused you to do that?

---

sible to state that it was casual. See, generally, *Cochrane v. William Penn Hotel,* 339 Pa. 549, 16 A. 2d 43 (1940); Barbieri, *Pennsylvania Workmen's Compensation,* §404.5 at 14-16 (1975).

"A. Well, I usually just ask him to go if I didn't have anything else to do. . . .

"Q. What did you get out of it, if anything, besides the pleasure of going riding with him?

"A. Money. He gave me a couple bucks for helping.

"Q. Was there any specific understanding about paying you any specific amount?

"A. No.

"Q. If he didn't pay you anything it was all right?

"A. Yes.

"Q. And whatever he paid you it was all right?

"A. Yes. . . ."

While each case must ultimately rest on its own facts, it is helpful to refer to previous opinions where similar factual situations have arisen. In *Harris v. Seiavitch,* supra, the minor plaintiff was performing an errand for his mother when he was approached by defendant, and asked whether he would like to ride on the back of defendant's milk truck to prevent children from jumping on the truck while defendant made deliveries. Minor plaintiff agreed and was promised "something" in return. Minor plaintiff sued in trespass for damages for injuries sustained while he assisted defendant. The Supreme Court affirmed the judgment and noted that "the evidence merely established a promise of a gift or gratuity and that there was no contract for wages. . . . He had never been employed, nor did he have any intention of being employed at the time of the accident. The assent of both parties is essential to create the relation of master and servant: *Corbin v. George,* 308 Pa. 201, 204. In the present case it is clearly apparent that the boy went along with defendant for the 'fun of it' and that neither he nor defendant intended to create such a relationship." *Harris v. Seiavitch,* supra at 297-98, 9 A. 2d at 376. While *Harris* lacks the continued relationship present in the instant case, in both, the minor plaintiff's primary motive for assisting the defendant was enjoyment.

*Brock v. Bowser,* supra, is factually closer to the present case. There, the defendants made sausage in the garage at the rear of their home. In weeks when business was particularly good, defendants' son, Sonny, would make sausage on the weekend. On several occasions, Sonny sought the assistance of his companion, the plaintiff. For their efforts, both Sonny and the plaintiff received from defendants "odd sums of money, a 'little change,' 'movie money,' and sometimes . . . a 'couple of dollars.' " *Brock v. Bowser,* supra at 210, 102 A. 2d at 122. After sustaining injuries while assisting Sonny, plaintiff brought suit in trespass, and the judgment he received was affirmed by the Supreme Court. Relying on *Harris v. Seiavitch,* supra, the Court held that the essentials of the master-servant relationship had not been made out. Furthermore, the Court stated: "It is also worthy of note that the defendants did not carry the minor plaintiff on their books as an employe as they did their part-time employees; nor did they pay social security taxes for him, or carry Workmen's Compensation insurance for him. Commenting on evidence of this character, the Superior Court said in *Sechrist v. Kurtz Bros.,* [supra at 218] : 'Although by itself it may be of little weight, the fact that claimant and such assistants as he employed were never carried on defendant's payroll is entitled to some consideration as indicative of lack of intention to create the relation of master and servant. The assent of both parties is essential . . .' " *Brock v. Bowser,* supra at 215, 102 A.2d at 124.[5] In the

---

5. See also, *Busch v. Bientzle,* 119 Pa. Superior Ct. 559, 181 A. 520 (1935). There, minor plaintiff assisted the driver of a brewery truck with the knowledge of the truck's owner. "There was no evidence of any definite compensation paid for these services other than a gratuity, or tip, in the sum of twenty-five or fifty cents, or a package of cigarettes." *Busch,* supra at 561, 181 A. at 521. The Court held that there was no proof of either an express or implied contract of employment for wages.

present case, appellee did not pay social security taxes for minor plaintiff and did not carry minor plaintiff as an employee on his records.

Although the question is a close one, we believe that the record does not support the conclusion that minor plaintiff was an employee of appellee at the time of the injury. While no one fact is dispositive, the totality of the circumstances does not lead to the conclusion that a contract of employment existed between minor plaintiff and appellee by tacit understanding: minor plaintiff worked when he pleased, and was under no obligation to render any service; minor plaintiff was free to refuse to do any work; minor plaintiff's remuneration was not regular, but depended entirely on the available resources of appellee; minor plaintiff assisted appellee because he enjoyed riding on the truck, and not because he sought compensation for regular employment; and, finally, appellee failed to carry minor plaintiff on his payroll and did not pay social security taxes or carry Workmen's Compensation insurance for him. Thus, the lower court's grant of summary judgment was improper.[6]

---

In *McManus v. Kuhn*, supra, the claimant frequently borrowed small sums of money from defendant in order to purchase liquor. Claimant subsequently would voluntarily appear at defendant's place of business and do odd jobs as a mode of repayment. The Court held that the facts did not establish a master-servant relationship: ". . . claimant failed to establish any contract of employment, express or implied. There was no agreement between the parties as to hours, wages or terms of hiring. Relationship was apparently casual and fortuitous. Claimant was, in a sense, a volunteer. The services performed were gratuitous, not contractual." *McManus*, supra at 547, 168 A. 2d at 619-620.

6. Because the resolution of this issue is entirely dependent on the factual situation presented, cases holding that an employer-employee relationship existed are not controlling. Thus, in *Fanning v. Apawana Golf Club*, supra, where a member of a golf club obtained permission from a club director for plaintiff to work as a caddy, the Court held that "[t]he circumstances surrounding the

The order of the lower court is reversed, and the case is remanded for trial.

WATKINS, P. J., dissents.

---

dealings between the minor claimant and the Apawana Golf Club make it a reasonable assumption that a contract of employment existed between them... The fact that the players for whom Fanning caddied rather than the defendant paid his wages does not militate against this conclusion." *Fanning*, supra at 184, 82 A. 2d at 585-586. In *Fanning*, however, minor claimant worked nearly every day for a period of one month prior to his injury, received "regular" wages in the sense that he was paid each time he caddied, and the record did not show that minor claimant was working "for the fun of it" rather than for monetary compensation.

In *Barr v. B & B Camper Sales*, supra, a retired railroad employee became friendly with the owner of defendant from whom he had purchased a camper. For a period of two years, claimant voluntarily rendered services to defendant when his efforts could be utilized. Claimant received no compensation during this period. "However, in April 1967, the relationship between [claimant] and appellant focused into a different posture. The [claimant's] visits and service activities increased in number. He made repairs to campers and trailers; demonstrated campers and trailers; travelled to secure new campers and trailers; operated the sales lot while appellant was on vacation and at night when appellant was not available; and purchased supplies for appellant. In addition, he had keys to the office and authority to draw checks when appellant, for any of many reasons, was not on the premises. During the period April 1967 through September 21, 1967, [claimant] was paid $390.00 by appellant." *Barr*, supra at 326-27, 300 A. 2d at 306. The Court found an employer-employee relationship, but noted that the facts did not fit squarely within the usual master-servant concept.

In *Hollen v. Workmen's Compensation Appeal Board and John Dospoy*, supra, the claimant was compensated at an hourly rate.