448 A.2d 1054

**Donald Frederick ASHMAN and Starr Inez Ashman, Husband and wife**
v.
**SHARON STEEL CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued March 18, 1981.

Filed May 21, 1982.

Reargument Denied Aug. 13, 1982.

Petition for Allowance of Appeal Denied Feb. 28, 1983.

306

308

P. Raymond Bartholomew, Sharon, for appellant.

Charles F. Gilchrest, Sharon, for appellees.

Before PRICE, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

This is a trespass action brought by Donald Frederick Ashman, truck driver, and his wife, Starr Inez Ashman, the appellees, for injuries he sustained while working on the property of the Sharon Steel Corporation, the appellant. Appellant raised the defense of the bar of the Pennsylvania Workmen's Compensation Act in its Answer, and, by stipulation of counsel, a bifurcated trial was held, with testimony on this threshold issue taken before the trial judge alone on September 17, 1979, resulting in an order September 20, 1979 which found that appellant was not protected from a common-law negligence action. Thereafter trial was held on issues of liability and damages, and a jury returned a verdict in favor of appellees in the amount of $151,000.00.

Appellant appealed to this court on several grounds: whether the bar of the Workmen's Compensation Act applied; whether there was a breach of duty to support liability on its part; whether the verdict was excessive. We affirm the verdict of the court below.

## HISTORY

The facts of the instant matter are generally not in dispute. The jury resolved the single factual dispute in favor of appellees and the resume of the facts was found as follows:

Appellant and Williams Brothers Trucking [hereafter Trucking Co.] have had a long-term relationship in which the Trucking Co. rents a portion of the appellant's property for its business and also contracts to supply trucking services to the appellant on a regular basis.

The contract in force between appellant and Trucking Co. at the time the instant injury took place, provided for leasing of trucks along with their operators for a single hourly rate to do a variety of jobs. The rate varied depending upon the type of vehicle used, but in every case it included use of the truck, services of a driver, fuel, insurance, and all other expenses.

An employee of the appellant called the Trucking Co. daily to order the number and type of trucks and to designate the jobs to be done, the number of regular hours and the amount of overtime. In the month in which the instant accident occurred, the "Euclid" vehicles and their drivers clocked 1,332 hours of work for appellant; other types of vehicles clocked an additional 377.5 hours.

The drivers were teamsters, and had been trained in the operation of their vehicles by the Trucking Co. Each man was responsible to report early and check out his vehicle at the Trucking Co. before going on his assignment for the day. A man might be assigned to appellant for work, or he might be sent on other business, hauling "over the road" for other customers. Drivers who went onto appellant's property had complete responsibility for their vehicles but took direction from appellant's employees as to such matters as where to place the truck for loading or where to dump their loads.

On one occasion, appellee had refused to load drums onto his vehicle when requested, and the appellant complained to the Trucking Co. He was reprimanded by the owner of the Trucking Co. for not being cooperative, and for a time was taken off assignment to work on the appellant's property.

On the date of the accident, plaintiff drove his "Euclid" to the site of the scale pit at appellant's plant pursuant to his morning instructions from the Trucking Co. He waited for

a crane to arrive, and he backed his truck into position as indicated by the crane operator before leaving the vehicle as a safety precaution.

The bucket of the crane refused to work and repair was necessary. The bucket was set on one side of the pit while the crane operator worked on the cables. As he was finishing, the operator told appellee, "Get that cable and bolt and put it in the bucket and we will get this damn show on the road." (N.T.29)

Appellee, remembering that his previous refusal to do anything other than teamster's work had been ill-received, attempted to follow these instructions. Although the crane operator had climbed the other side of the bucket earlier, appellee found he was unable to do so unaided. He therefore placed a wooden pallet against the side of the bucket as a rudimentary ladder and proceeded to climb the "rungs." The bucket shifted in the pebbly soil and flipped appellee onto a railroad track, where his left arm hit the ties and sustained permanent damage.

## DISCUSSION

Appellant argues strongly that it occupies the position of "employer" toward appellee both under the language of the Workmen's Compensation Act and under the Master Servant relationship in common law. Alternatively, it argues that appellee was a trespasser on its property or at most was a "business-invitee" of a lower order, and that it did not breach any duty of care owed to appellee and cannot be liable for his damages. Finally, appellant argues that the combined verdicts awarded husband and wife appellees were excessive.

Whether appellant qualified as an employer under statutory language or under common law will be the first question considered. We affirm the holding of the lower court that it was not, but on different reasoning.

## The Statutory Language

There are three applicable sections of the Workmen's Compensation Act to be examined for an analysis of the statutory language as to the employer-employee relationship. Section 52 originally defines liability in the instant circumstances.

**Employers' liability to employee of employee or contractor permitted to enter upon premises.**

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe. 1915, June 2, P.L. 736, art. II, § 203; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1.

Were this wording our only guide, we would have to say that under the clear meaning of the terms, the present facts would fit the statutory criteria. Appellant permitted appellee, who was hired by the Trucking Co.-contractor which did its hauling, to enter premises "occupied by" it and "under its control." Testimony established that the driver controlled the vehicle entirely, but was subject to direction from appellant's employees while on that property.

Contrary to the opinion of the lower court, we also find that the work done on appellant's grounds by appellee was clearly part of its "regular business." Section 22, containing the definition of "employe", also has wording that opposes "regular course of business" with "casual in character" in describing the employment itself; in pertinent part, that section provides as follows:

§ 22. "Employe" defined

The term "employe", as used in this act is declared to be synonymous with servant, and includes—

All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employ-

ment *is casual in character and not in the regular course of the business* of the employer, . . . (Emphasis supplied).

Common sense asserts that the services of the Trucking Co. employes, running to nearly two thousand hours a month on appellant's property, were far from "casual" and were indeed vitally necessary to the smooth functioning of that company. The court in *Dews v. Shmukler*, 199 Pa.Super. 417, 185 A.2d 607 (1962) distinguished these terms as follows:

> Employment is not "casual" even if only for single or special jobs, if it is not of emergency or incidental nature but represents a planned project, and tenure of service necessary to complete it and for which employment is to continue is of fairly long duration.

Appellee was employed for valuable consideration as part of a well-planned long term enterprise essential to appellant's business. We must, therefore, disagree with the analysis of the court below which excluded the appellant from the status of statutory employer on the grounds that the services for which it hired appellee were not part of its regular business. Under the wording of § 52, without more, plaintiff would appear to be an "employe" of defendant. However, both case law and later statutory definition prevent that result.

In 1972 the Act was amended to include the definition of "contractor" in Section 25, as set forth *infra*.

§ 25. "Contractor" defined.

The term "contractor" as used in article two, section two hundred and three,[1] and article three, section three hundred and two (b),[2] shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, but shall include a sub-contractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken. (Emphasis supplied).

[1] Section 52 of this title.
[2] Section 462 of this title.

This wording *excludes* from consideration any contractor "engaged in an independent business . . . in which he serves persons other than the employer in whose service the injury occurs." The Trucking Co. serves companies other than appellant, which places it in the "independent business" category and takes it out of the definition of "contractor" in § 52.

The term "contractor" does, however, by definition at § 25, *include* contractors in the business of "supplying laborers or assistants." Even assuming that a teamster whose services are rented out on an hourly basis falls into the category of "laborer or assistant"—a matter which we need not decide—plaintiff here was supplied *in conjunction with* the equipment he drove. Under Pennsylvania law, this is a significant distinction, see discussion *infra*.

■ Additionally, "contractor" at § 25 also includes a "subcontractor" to whom a "principal contractor" has sublet some portion of the work the principal contractor has undertaken. Appellant is not a "principal contractor," but an *owner* of the property. Our courts have held that this distinction is significant; an independent contractor's employe is not ordinarily considered to become an "employe" of the owner of the property for Compensation Act purposes. *Brooks v. Buckley & Banks*, 291 Pa. 1, 139 A. 379 (1927); *Freeny v. William Penn Broadcasting Co.*, 180 Pa.Super. 434, 118 A.2d 275 (1955).

■ Therefore, under the instant facts, we find that contrary to appellant's argument, appellant, under the relevant statutory language of the Workmen Compensation Act, is not the "employer" of the appellee. To recapitulate in brief, he remains the employe of the Trucking Co. for the following reasons: (1) the Trucking Co. supplies a number of customers besides appellant; (2) it is also in the business of leasing equipment and operators in a single package; (3) it leased the equipment and services of its operator directly to the appellant itself, the property "owner," and not to a "principal contractor" subleasing a part of the work to be done on an owner's property.

## COMMON LAW MASTER–SERVANT RELATIONSHIP

This disposition under statutory language does not entirely dispose of the matter. Case law should also be examined in the determination of a master-servant relationship, a concept that existed in common law long before the Workmen's Compensation Act was drafted and which is specifically incorporated into the wording at § 22, see citation *supra*. The classic test determining the "true" master when a servant has been loaned to another is by examination of the right of control:

> The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it.* [citation omitted]

> .    .    .    .    .

> A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not. [Citations omitted; emphasis in original], *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953).

Although opinions considering the matter frequently mention such items as which employer actually hired the servant, and which paid his wages, and which issued his W–2 Form, these are peripheral matters and are not controlling. *English v. Lehigh Co. Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) and cases cited therein.

■ The true measure remains the common law definition of the master-servant relationship "... whether ... he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." *Puhlman v. Excelsior Express and Standard Cab Co.*, 259 Pa. 393, 103 A. 218 (1918), *accord, English v. Lehigh County Authority, supra.* Our question then becomes whether control or right of control lay with the Trucking Co. or the appellant.

We have discussed, *supra*, the fact that the work done by appellee in conjunction with his equipment and for which he was permitted entry on appellant's property was not "casual," a matter which is determined in law. *Barnett v. Bowser*, 176 Pa.Super. 17, 106 A.2d 457 (1954). It was not for a "single" or "special" job, see quotation from *Dews v. Shmukler*, cited *supra*, nor was it work undertaken as a "volunteer," *Stewart v. Uryc*, 237 Pa.Super. 258, 352 A.2d 465 (1975), or "for the fun of it," *Harris v. Seiavitch*, 336 Pa. 294, 9 A.2d 375 (1939).

Certainly the appellant did exercise certain controls over the appellee and other Trucking Co. employes while they were engaged in appellant's work. The Trucking Co. also retained large measures of control over the men and equipment it leased. The strong interrelationship between these two companies in particular tends to blend the lines of command. Case law, however, has recognized the problem as a common one, and does supply some guidance.

In *Mature v. Angelo, supra*, the Supreme Court found the "borrowing" employer of a dirt-loader leased with its operator not liable in tort to an injured third party, but that the owner and lessor of the vehicle with its operator was responsible. In that instance the loaned employee and vehicle had been engaged in regular business on the borrowing employer's site for some months; the equipment was handled only by its skilled operator, but the daily work was at the direction of the foreman of the borrowing company.

While the loader was actually performing work on the site, the operator suddenly backed over a workman's foot. The court in that instance made the following analysis:

> The above recital of facts obviously reveals that this is an ordinary, typical case of the renting of a machine with an operator specially skilled for the purpose from one who is in the business of renting out such machines and operator, where neither the person renting such machine and operator, nor his own employes, are competent to run such a machine and merely direct the operator concerning the work to be done,—not the manner of performing it. Of

course, anyone who engages the service of a technician or specialist for the performance of a particular job must of necessity indicate to him from time to time the work that he wishes done and for which he has engaged him; in accordance, however, with the foregoing statement of the applicable legal principle, the giving of such directions does not bring the hired servant into *his* employ and make *him* responsible for the *performance* of the work. *Id.*, 373 Pa. 600–01, 97 A.2d at pp. 62–63 (Emphasis in original)

■ We may assume, therefore, that had the driver in the instant action been a tort-feasor rather than an injured party, he would have been the agent of the Trucking Co. There seems to be no sensible distinguishing characteristic that would impel this court to focus on the master-servant relationship differently depending on whether the servant is the perpetrator or the victim of the accident. The common law of master and servant focuses on the control of the servant, not on whether he or another is the injured party. When several months of continuous service on a borrowing employer's property, working at his direction, did not sever the relationship of master-servant under the facts of *Mature, supra*, it should not do so in the present case. Certainly, as to the work that brought appellee onto appellant's property, and which he performed with the equipment he controlled, we find no unusual exercise of power by the appellant which would place it in the master's position when the property owner in *Mature* did not occupy that position.

## DUTY OF CARE TO TRESPASSER OR INVITEE

■ Appellant argues that as to the events of the accident itself, appellee was a trespasser, and that even if he was a business invitee, the duty owed to him by appellant was not such as would make it liable to him for his harm. The crane operator, appellant's agent, denied in his testimony that he ever gave any order to appellee as to hooking up the bucket, and also denied seeing appellee drag over the pallet and begin the climb that ended in the injury. The jury heard both versions of the story of the injury and obviously

determined that appellee's was the true one. They were there to decide questions of credibility; that was their province, and there was certainly testimony to support their conclusion. This court will not disturb their determination of the facts. Therefore, we need not examine any argument as to care due a trespasser.

Appellant also argues that the duty of the landowner to employes of an independent contractor is not so stringent as that accorded business invitees in public places such as stores, and he supports this argument well. However, this is not a case of a "business invitee" in either the category of independent contractor's employe or the category of a shopper wandering into visible or hidden, known or unknown dangers.

## TORT LIABILITY TO A CASUAL EMPLOYEE

We do, however, find a sufficient basis to sustain tort liability against appellant, although on a basis not clearly articulated below.

The facts present us with an employe of an independent contractor standing aside from his vehicle for safety purposes, ordered to do a job outside of his ordinary expertise by the agent of the appellant. Appellee sprang to obey. Why? Because the last time he refused to "lend a hand" he had been reprimanded and shifted to over-the-road-work for other customers for a while. On this occasion he considered refusal to be impolitic, and did his best to get "this damn show on the road" as ordered.

■ Here at last we see a "casual" employment. The appellee engaged in a "single," "special" job, of "incidental" nature, and his motive was not remuneration. He was a teamster and he operated vehicles for his "valuable consideration." His experience was that he would be lectured and perhaps shifted to work that was physically harder and required travel. He assisted the crane operator for the simple motive of avoiding trouble—a motive as trivial as that of the boy in *Harns, supra*, who undertook to ride the rear of a truck "for the fun of it."

Casual employment, trivial in nature and not undertaken for valuable consideration does *not* place the kind of "control" in an employer that brings with it the responsibility contemplated by the Workmen's Compensation Act. *It does, however, leave the employer open to liability under traditional tort principles.*

Therefore the holding of the lower court that appellee was not an employe of appellant for purposes of the bar of the Workmen's Compensation Act was correct, and we affirm. We turn now to the results of the jury trial in this bifurcated matter, and examine the liability and the damages.

## BREACH OF DUTY OF CARE

■ Reviewing the record and the opinion of the court below, as we must, in the light most favorable to appellees, and awarding them every favorable inference to be deduced therefrom, *Harris v. Seiavitch, supra,* 336 Pa. 296, 9 A.2d at 376, we find that appellant's agent requested a man who was overweight and not accustomed to climbing a crane bucket to do a job that he was untrained for and physically ill-equipped to perform. Appellant's agent knew the soil was loose and pebbley, and watched the makeshift ladder being laid to the side of the bucket. There is evidence on the record to support negligence on the part of the agent, for the jury could easily find that the agent should have known that the circumstances of the poor soil, the leverage of the pallet climbed by an overweight man, the height and weight of the bucket, and the lack of training of the teamster-appellee was a combination that could lead to an accident.

The appellant presented conflicting testimony for the jury's review, but where the jury has evidence to support its findings, we are not inclined to disturb those findings, especially when the trial judge did not. 9 *Standard Pa. Practice,* p. 433 and cases cited therein.

## AWARD OF DAMAGES

■ Having determined that a breach of duty had occurred, the jury also heard evidence as to the amount of

disability suffered by the plaintiff. The testimony contained evidence that the appellee's injuries to his left arm became increasingly painful over time, that an operation did not improve the situation, and that his abilities as a teamster were so impaired that he has been unable to continue that employment. He has been unsuccessful in his efforts to retrain to another type of job, in large part because of his limited education. Limiting his work to the easier job of driving the "Euclids" did not work either. He has suffered physically from the pain and mentally from the depression that ensued from being unemployable.

There was testimony as to his loss of earnings also, and we agree with the lower court that the jury would have been justified in projecting appellee's future earning capacity in a figure "considerably in excess of the amount awarded him." We assume that the relative paucity of the figure involved takes into account the various factors introduced into evidence by appellant to show that appellee was not the most reliable of employes and not in the best of health, independent of the injury to his arm. We cannot say, however, upon review of the evidence, that it was insufficient to support this verdict.

Therefore, the order of the court below is affirmed.

BROSKY, J., files concurring opinion.

BROSKY, Judge, concurring:

I agree with the majority generally that Sharon Steel Corporation does not qualify as a statutory employer under the Workmen's Compensation Act. 77 P.S. § 52.[1] I also share the view that a relationship existed between Donald Ashman and Sharon Steel such that a duty of care arose resulting in Sharon Steel's liability to Ashman for damages resulting from Sharon's negligence if that duty of care was breached. I believe somewhat more discussion on this point is helpful. Finally, I wish to address the issue raised by Sharon Steel that the damages awarded were excessive.

1. I am satisfied specifically that Ashman was not a "loaned employee" to Sharon Steel thereby qualifying Sharon Steel as a statutory employer. *Lane v. Schucht*, 260 Pa.Super. 68, 393 A.2d 1015 (1978).

A business invitee is defined in the Restatement 2d of Torts, § 332(3) [2] as:

§ 332. Invitee Defined

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

The Comment to Subsection (3) states in relevant part:

e. *Two classes of business visitors.* Business visitors fall into two classes . . . .

The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor; and so is a workman who comes to make alterations or repairs on land used for residential purposes.

Thus because Ashman was employed to perform certain tasks which benefitted Sharon Steel on Sharon Steel's property, he was a business invitee. The fact that Ashman was injured while performing a task for which he was not specifically hired I do not believe affects his status as a business invitee. Ashman, after all, was commanded by an agent of Sharon Steel to assist in the repair of a crane which was vital to the loading of Ashman's truck.

It is beyond cavil that the duty of care owed to a business invitee by a property owner is stated in Restatement of Torts 2d §§ 341A and 343.

§ 341A Activities Dangerous to Invitees

A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only

**2.** Pennsylvania courts have adopted § 323 as the law in Pennsylvania. See Restatement 2d of Torts, Appendix § 332.

if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it.

Section 343 indicates what dangers a possessor of land is expected to know or discover.

§ 343 Dangerous Conditions Known to or Discoverable by Possessor

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Liability is limited, however, in § 343A. The possessor is not liable to the invitee for injuries which result from "any activity or condition on the land which is known or obvious to them, . . . " id.

In *McKenzie v. Cost Bros. Inc.*, 487 Pa. 303, 309–310, 409 A.2d 362, 365 (1979), our Supreme Court said in its discussion of the standard of care owed an invitee:

This was also aptly pointed out by Professor Prosser in his treatise.

The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it. W. Prosser, Handbook of the Law of Torts (4th ed.1971) p. 180.

Two comments to section 343 are particularly germaine to the instant discussion. Comment (d) provides:

d. *What invitee entitled to expect.* An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is

not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering. This is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor.

Restatement (Second) of Torts, § 343, Comment (d) (1965). Comment (e) provides in pertinent part:

(e) *Preparation required for invitee.* In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance.

Restatement (Second) of Torts, § 343, Comment (e) (1965).

Accordingly, Sharon Steel owed Ashman a reasonable standard of care to protect him from dangers which, quite naturally were associated with the procedure of loading trucks, and about which Ashman would be unaware. I would hold that it was reasonably foreseeable that Ashman would aid a Sharon Steel employee in the process related to loading his truck if he was asked to do so. Thus, Sharon Steel owed a duty of reasonable care to Ashman to assure that he not be injured by equipment in need of repair. Clearly, that duty was breached and Sharon Steel was properly found to be negligent.

Sharon Steel's final contention is that the damages awarded to the Ashmans was excessive. In *Kravinsky v. Glover,* 263 Pa.Super. 8, 25–26, 396 A.2d 1349, 1358 (1979), we said:

Turning to appellant's contention that the verdict is excessive we note that in *Skoda v. West Penn Power Co.,* 411 Pa. 323, 338, 191 A.2d 822, 830 (1963), our Supreme Court stated:

"Appellate courts are properly reluctant to interfere with jury verdicts in personal injury cases, which verdicts are supported by the opinion and approval of the trial judge and the court en banc. *Roadman v. Bellone*, [379] 479 Pa. 483, 108 A.2d 754 (1954). The granting of refusal of a new trial because of excessiveness is preculiarly within the discretion of the court below and we will not interfere, absent a clear abuse of discretion. *Hall v. George*, 403 Pa. 563, 170 A.2d 367 (1961). We will not hold that a verdict is excessive unless it is 'so grossly excessive as to shock our sense of justice.' *Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953), and cases cited therein." In *Robert v. Chodoff*, [259] Pa.Super. [332], [366], 393 A.2d 853, 871 (1978), we outlined some of the factors relevant in determining whether a verdict is excessive.

"(1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint." (footnote omitted.) See *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976). Mere disparity between the amount of the verdict and out-of-pocket expenses is not in itself sufficient grounds to disturb a verdict. In *Carminati v. Philadelphia Transportation Company*, 405 Pa. 500, 176 A.2d 440 (1962), our Supreme Court upheld an award of $79,500 although medical expenses were less than $200. Similarly, we have sustained a verdict of $25,000 although medical expenses totalled only $549.60. *Simmons v. Mullen*, supra, 231 Pa.Super. [199] at 215, 331 A.2d [892] at 901.

Applying the above standard to the instant case, we find that, Mr. Ashman has suffered a permanent disability to his left arm affecting his ability to rotate his arm. This malady will affect his ability to continue his employment as a truck

driver. While he can continue to drive a vehicle, he will not be able to operate the kind for which he was trained. This will result in substantial lost earnings. Furthermore, Mr. Ashman continues to suffer pain associated with the injury and evidence was submitted that his pain in all likelihood will persist. Testimony also supports Ms. Ashman's award for loss of consortium. While Mr. Ashman has suffered only nominal out-of-pocket expenses for his injuries, I would hold that his loss of earnings, his pain and Ms. Ashman's loss of consortium when considered together justify the award. I do not find the award so excessive as to shock my sense of justice. I cannot find, under these circumstances, that the trial court clearly abused its discretion.

I concur in the opinion of the majority to affirm the order of the court below.