Industrial Valley Bank & Trust Co. and Reliance Insurance Company, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Anthony Tomasetti, Administrator of the Estate of Nathaniel Anderson, Deceased, Appellees.

Argued January 10, 1975, before Judges KRAMER, WILKINSON, JR. and MENCER, sitting as a panel of three.

R. D. Harburg, with him Swartz, Campbell & Detweiler, for appellants.

Norman H. Abrahamson, with him Meyer, Lasch, Hankin & Poul, and James N. Diefenderfer, for appellees.

OPINION BY JUDGE KRAMER, February 19, 1975:

This is an appeal by the Industrial Valley Bank & Trust Company (Bank) from an order of the Workmen's Compensation Appeal Board (Board) dated May 30, 1974, which affirmed a referee's award of compensation to Nathaniel Anderson (Anderson).[1] This case has returned to us after we remanded because of certain procedural complications which are fully explained in our prior decision.[2] The case is now ripe for an appeal on the merits of the claim.

As we explained in our prior opinion, Anderson made his living collecting junk in a pushcart and selling it to a junkyard. On the recommendation of the owner of the junkyard, he and another man were hired

---

[1] Anderson is now deceased, and his death apparently had no connection with the injury involved in the instant case.

[2] Industrial Valley Bank & Trust Co. v. Workmen's Compensation Appeal Board, 9 Pa. Commonwealth Ct. 554, 308 A. 2d 909 (1973).

on October 28, 1968, by an officer of the Bank to move several filing cabinets from the main floor of one of the Bank's buildings to the basement of that building, a move which the Bank had to make about once a year. Anderson had never worked for the Bank before, and it was expected that this job would only require a few hours to complete. He was to be paid two dollars per hour. Unfortunately, while he was moving the first cabinet down the steps, it toppled and caused him to fall to the bottom of the steps. The cabinet fell on top of him. He suffered a fracture of his right ankle and filed a claim petition seeking workmen's compensation benefits.

The Bank contends that Anderson is not entitled to compensation because he was not an "employe" as defined in Section 104 of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §22 (Supp. 1974-1975). Section 104 excludes from the Act's coverage employes whose work is "casual in character and not in the regular course of the business of the employer. . . ." Anderson's personal representative concedes that Anderson was a "casual employe," and the only issue presented by this appeal is whether his employment, even though "casual," was "in the regular course of the business" of the Bank. There is no material disagreement as to the facts, and the question is one of law. *Barnett v. Bowser,* 176 Pa. Superior Ct. 17, 106 A. 2d 457 (1954). Our power to review for errors of law in a cash such as this is clear. *David v. Bellevue Locust Garage,* 12 Pa. Commonwealth Ct. 602, 604, 317 A. 2d 341, 342 (1974).

The Board concluded that Anderson was engaged in the Bank's regular course of business, and reasoned that this conclusion followed from the fact that record keeping is necessary to a bank's operations. The Board reasoned that Anderson was involved in physically moving bank records when he was injured; hence, his accident

was suffered in the regular course of business. The problem with the Board's definition of "regular course of business" is its breadth. We must assume that the Legislature, by inserting the exclusion of coverage in Section 104, intended some real distinction between the primary income-producing activity of an employer, and other operations which, while perhaps necessary, are clearly incidental to the main function of the business enterprise. If this were not so, any employe who is engaged in *any* activity which is related to the employer's business would be covered by the Act, and we would be left with an almost meaningless statutory provision. Numerous cases have dealt with the definition of "regular course of business" under the Act, and they appear to be entirely consistent with our view of Section 104.

In *Ciccocioppo v. Rocco,* 172 Pa. Superior Ct. 315, 94 A. 2d 77 (1953), the Superior Court characterized the claimant's work as "incidental." The claimant worked for six days painting and repairing a tavern, after being engaged to do this by the owner-operator. The Court rejected the argument that the owner was in the business of "operating" real estate, simply because the holding and maintenance of some real estate was essential to the operation of his tavern. The Court noted that the regular course of business of the employer was "the serving of food and drink to his patrons," and nothing more. *See also Miller v. Farmer's National Bank,* 152 Pa. Superior Ct. 405, 33 A. 2d 646 (1943) and *Magalski v. Olyphant Borough,* 150 Pa. Superior Ct. 216, 27 A. 2d 280 (1942).

The principal which must control our decision was aptly summarized by the Supreme Court in *Callihan v. Montgomery,* 272 Pa. 56, 72, 115 A. 889, 894-95 (1922), where the Court said: "The casual employment of one, for the performance of an odd job, may occur in conducting a business and still not be within its regular course. For instance, emergency repair work on a machine used in the operation of a business can always be

said to take place in the course of that business, as all machinery, at some time or other, is bound to need repair; but such work is not of a kind usually performed by or under the control of the person conducting the business, would be outside the regular course thereof. The legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repairing the premises, appliances or machinery used therein. While repair work may be considered an important incident to any business using machinery, and, in some cases, may enter into the customary operations of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case."

Our reading of the record and adjudications in this case leads us to conclude that the Board erroneously applied section 104 in allowing benefits to Anderson. The occasional moving of filing cabinets, while certainly related to the conduct of a banking business, is simply too remote from the actual, day-to-day operations of a bank to enable Anderson to avoid the exclusionary provision of the Act. We therefore

### Order

And Now, this 19th day of February, 1975, it is hereby ordered that the order of the Workmen's Compensation Appeal Board, dated May 30, 1974, awarding workmen's compensation benefits to Nathaniel Anderson is vacated;

and it is further ordered that judgment be entered for the Industrial Valley Bank & Trust Company and its insurance carrier, Reliance Insurance Company.