Miller Motor Mart and Erie Insurance Exchange, Insurance Carrier, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Alice Sines, Widow of Lowell Sines, Respondents.

Miller Motor Mart and Erie Insurance Exchange, Insurance Carrier, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Lois W. Thomas, Widow of Samuel Eugene Thomas, Respondents.

Argued September 13, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

*Elmer G. Klaber,* for petitioners.

*Oliver N. Hormell,* for respondents.

OPINION BY JUDGE ROGERS, October 24, 1979:

Miller Motor Mart (Miller Motor) and Erie Insurance Exchange have appealed from an order of the Workmen's Compensation Appeal Board affirming a referee's award of compensation benefits to Alice Sines and Lois Thomas, whose husbands, Lowell Sines and Samuel Thomas, were killed while transporting a fuel tank to Miller Motor premises.

Miller Motor was engaged in the business of selling farm machinery, lawn and garden equipment and gasoline from pumps located on its premises. Desirous of expanding its business to include the sale of diesel fuel, Miller Motor ordered a two thousand gallon tank from a petroleum company to be used for the storage of diesel fuel. Subsequently, Miller Motor learned of an opportunity to obtain a four thousand gallon fuel tank for nothing if it provided transportation of the tank to its premises. To this end, a partner or partners of Miller Motor asked Samuel Thomas and Lowell Sines to take a truck owned by Miller Motor, pick up the tank and transport it back to Miller Motor. Each man

was to be paid $25.00 by Miller Motor for the day's work. On the way back to Miller Motor, the tank exploded, killing Samuel Thomas. Lowell Sines died from injuries thirteen days later. The widows of Thomas and Sines filed fatal claims petitions and benefits were awarded by the referee whose decision was affirmed by the Board.

The issue in this case is whether Thomas and Sines are excluded from the purview of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq., by operation of Section 104 of the Act, 77 P.S. §22, which excludes from the Act's coverage "persons whose employment is casual in character and not in the regular course of the business of the employer." Since it is agreed that Miller Motor's employment of Thomas and Sines was casual in character, the only question presented is whether their employment was "in the regular course of business" of Miller Motor. This is a question of law, *Barnett v. Bowser,* 176 Pa. Superior Ct. 17, 106 A.2d 457 (1954). We are compelled by the authorities to hold that, contrary to the Board's conclusion of law, Thomas and Sines were not employed in the regular course of Miller Motor's business.

Stated simply, Mrs. Thomas and Mrs. Sines take the position that, because Miller Motor wanted to expand into diesel fuel sales (and does, in fact, now sell diesel fuel), the procurement of the four thousand gallon tank was a necessary prerequisite to the sale of diesel fuel and the employment of their husbands was therefore in furtherance of the regular course of Miller Motor's business. We believe the authorities compel the opposite result. *Industrial Valley Bank & Trust Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 420, 332 A.2d 882 (1975).

In *Industrial Valley,* the Bank hired one Anderson for a few hours to move some filing cabinets from the

main floor of the bank to the basement, a move made approximately once a year. Anderson, who had never worked for the bank before, was injured while performing the work. The parties in *Industrial Valley*, as here, agreed that Anderson's employment was casual in character. This Court reversed the Board's award of benefits, for the following reasons equally applicable to this case:

> The Board concluded that Anderson was engaged in the Bank's regular course of business, and reasoned that this conclusion followed from the fact that record keeping is necessary to a bank's operation. The Board reasoned that Anderson was involved in physically moving bank records when he was injured; hence, his accident was suffered in the regular course of business. The problem with the Board's definition of 'regular course of business' is its breadth. We must assume that the Legislature, by inserting the exclusion of coverage in Section 104, intended some real distinction between the primary income-producing activity of an employer, and other operations which, while perhaps necessary, are clearly incidental to the main function of the business enterprise. If this were not so, any employe who is engaged in *any* activity which is related to the employer's business would be covered by the Act, and we would be left with an almost meaningless statutory provision. (Emphasis in original.)

16 Pa. Commonwealth Ct. at 422-23, 332 A.2d at 884.

"The words 'regular course of business of the employer' . . . have reference to the normal operation which regularly constitutes the business in question *excluding incidental or occasional remodeling or repairs of the employer's building.*" *Ciccocioppo v. Rocco,* 172 Pa. Superior Ct. 315, 317, 94 A.2d 77, 78 (1953).

(Emphasis added.) In this case, Miller Motor's business was the sale of various types of machinery and of gasoline. Although Miller Motor wished to expand its business to include the sale of diesel fuel, the procurement and transportation of the four thousand gallon tank, a one-time event, was incidental to Miller Motor's present or prospective course of business and falls in the category of "incidental or occasional remodeling or repairs" mentioned in *Ciccocioppo, supra.* In *Sgattone v. Mulholland & Gotwals, Inc.*, 290 Pa. 341, 347, 138 A. 855, 857 (1927), Mr. Justice SADLER defined "regular course of business" as the normal operations which constitute the business. Here the transportation of the four thousand gallon tank was not a normal operation of Miller Motor's business.

The claimants rely principally on the cases of *Davis v. City of Philadelphia*, 153 Pa. Superior Ct. 645, 35 A.2d 77 (1943); *Snavely v. Redemptorist Fathers*, 151 Pa. Superior Ct. 627, 30 A.2d 724 (1943); and *Diviney v. J. H. France Fire Brick Co.*, 140 Pa. Superior Ct. 97, 13 A.2d 109 (1940). In *Snavely, supra* and *Diviney, supra*, the employes in question had been hired as an integral part of a planned course of action, to be executed with the employes' help over an extended period of time. Thomas and Sines were employed by Miller Motor for one day only. Furthermore, although it has been argued that Miller Motor's acquisition of the four thousand gallon tank was part of a planned course of action, Thomas and Sines, apart from one day's employment, did not appear from the record to be an integral part of that plan. In *Davis, supra*, an auctioneer's assistant was injured while removing equipment from a mine in preparation for its sale. Mrs. Thomas and Mrs. Sines argue that *Davis* therefore holds that a one-time operation can be in the regular course of an employer's business. However, the *Davis* Court recognized that "[i]t may be re-

garded as more or less common knowledge that auctioneers . . . take complete charge of removal, cataloging and display of goods to be disposed of by them.'' 153 Pa. Superior Ct. at 651, 35 A.2d at 80, and that the removal of the equipment from the mine was clearly in the regular course of the auctioneer's business. It is not common knowledge that the transportation of a storage tank to a gasoline service station is a "primary income-producing activity'' of the station, to use the *Industrial Valley, supra,* phrase, or a "normal'' operation thereof, in the words of *Sgattone, supra;* rather it is plain to us that it is "incidental and occasional'' and therefore excluded as held in *Ciccocioppo, supra.*

Accordingly, we enter the following:

### ORDER

AND Now, this 24th day of October, 1979, the orders of the Workmen's Compensation Appeal Board awarding compensation benefits to Alice Sines, Widow of Lowell Sines, and to Lois W. Thomas, widow of Samuel E. Thomas, are reversed.