552 A.2d 668

William C. MARTIN, III and Louise Martin, His Wife,

v.

Robert R. RECKER, Individually and d/b/a Recker Transfer Company, Appellant.

William C. MARTIN, III and Louise Martin, His Wife,

v.

Linda RONSTADT, Peter Asher Management, Inc., a Corporation, Jess S. Morgan & Co., Inc., a Corporation, DiCeasare/Engler/Stanley Theater Company, a Corporation Clark Transfer Company, Inc. a Corporation Showco, Inc., Mercy Hospital of Pittsburgh, a Nonprofit Corporation.

Appeal of SHOWCO, INC.

William C. MARTIN, III and Louise Martin, His Wife, Appellants,

v.

Robert R. RECKER, Individually and D/B/A Recker Transfer Company.

William C. MARTIN, III, and Louise Martin, His Wife, Appellants,

v.

Linda RONSTADT, Peter Asher Management, Inc., a Corporation Jess S. Morgan & Co., Inc., a Corporation, DiCeasare/Engler/Stanley Theater Company a Corporation, Clark Transfer Company, Inc., a Corporation, Showco, Inc., Mercy Hospital of Pittsburgh, a Nonprofit Corporation.

Superior Court of Pennsylvania.

Argued June 3, 1987.

Filed Dec. 13, 1988.

528

John M. Silverstri, Pittsburgh, for appellant in No. 1009 and appellee in No. 1049.

David J. Obermeier, Pittsburgh, for appellant in No. 1019 and appellee in No. 1059.

Jon L. Friedman, Pittsburgh, for appellants in Nos. 1049 and 1059, and appellees in Nos. 1009 and 1019.

Before DEL SOLE, POPOVICH and MONTGOMERY, JJ.

DEL SOLE, Judge *:

Presented for our review are cross-appeals arising from a personal injury action. Among other issues, we are asked to consider the propriety of the trial court's charge as it relates to the doctrines of assumption of the risk and vicarious employer liability. We will also address the applicability of the jurisdictional immunity found under the Workmen's Compensation Act.

The underlying action was commenced following an accident in which plaintiff, William C. Martin, sustained injuries while loading equipment onto a tractor trailer. The incident occurred on the evening of November 18, 1982 in the parking lot adjacent to the Stanley Theater following a concert by Linda Ronstadt. Mr. Martin and his wife brought suit against numerous parties. In an effort to understand the relationship of these parties and their potential responsibility for the injuries suffered by the plaintiffs, a complete summary of the facts is necessary.

In 1982 singer Linda Ronstadt was on tour bringing her show to various cities. In regard to her performance at the Stanley Theater in Pittsburgh, Pennsylvania, a contract was entered into between DiCeasare–Engler Productions and

* This case was reassigned to this writer on June 22, 1988.

Linda Ronstadt by her personal manager Peter Asher. This contract set forth the performer's various needs for the show, which DiCeasare–Engler as the promoter, would provide. Attached to the contract was a rider containing specific requirements for the sound and light systems. In addition to other items, it identified the number of truck loaders and stagehands which would be needed. The details of the rider were authored by Showco, Inc. (Showco), the company responsible for the lighting and sound systems for the Ronstadt tour. The equipment needed to facilitate the lighting and sound was hauled from city to city by Clark Transfer, which had entered into an agreement with Ms. Ronstadt to perform this service.

Prior to the date set for the concert in Pittsburgh, DiCeasare–Engler set out to arrange for stagehands and loaders to be present for the loading and unloading of the trucks which were carrying the equipment for the show. Mr. Robert Recker of Recker Transfer Company (Recker) was contacted by an employee of DiCeasare–Engler and arrangements were made to have a number of men available to handle the loading and unloading tasks. These individuals unloaded the concert equipment without incident on the morning of the show. Some time later that evening the men hired by Recker Transfer Company arrived at the Stanley Theater to begin reloading the equipment onto the tractor trailers.

William Martin was an employee of Recker and was one of the men assigned to work the night of November 18, 1982 as a "loader." Also present that evening was an employee of Showco who instructed the loaders where to place the equipment in the trailers. The tractor trailers used to haul the concert equipment came with a ramp which was typically set in place by a loader. On the evening of the concert the loaders walked up this ramp and loaded the trailer with Showco's lighting and sound equipment. In packing the trailer that evening space was lost and the trailer became filled with boxes which were arranged in columns. To facilitate the packing of the last remaining

column the ramp was pulled out in such a manner that the lip of the ramp rested on the doorjamb of the trailer. Two or three more boxes were then placed inside the trailer until only one space remained empty at the top right side of the rear of the trailer. There was some dispute between Mr. Recker and an employee of Showco as to whether the box involved in the accident would fit into the remaining space. Mr. Recker left the area and the Showco employee instructed the loaders to place the box into the empty area. The box weighing approximately 200 pounds was then rolled up the ramp where Mr. Martin was standing with his left foot on the doorjamb of the trailer and his right foot on the ramp. As Mr. Martin and another loader proceeded to lift the box and shove it into its space, the ramp left the base of the truck and Mr. Martin fell. He landed on his feet but was later knocked to the ground when his head was struck by the center of the box. Thereafter, Mr. Martin was taken to The Mercy Hospital of Pittsburgh where he was examined and released.

Subsequent to the accident, two separate lawsuits were filed by Mr. Martin and his wife. The first named as the defendant Robert Recker, individually and d/b/a Recker Transfer Company. The second suit was brought against Linda Ronstadt, Peter Asher Management, Inc., Jess S. Morgan and Co., Inc. (Ms. Ronstadt's business manager), DiCeasare/Engler/Stanley Theater Company, Clark Transfer Company, Showco, Inc., and The Mercy Hospital of Pittsburgh. The two actions were consolidated for trial. A jury trial was held after which a verdict was entered in favor of the plaintiffs, Mr. and Mrs. Martin, and against Recker and Showco. The jury found plaintiff to be 30% negligent, Showco 45% negligent and Recker 25% negligent. The jury verdict was molded by the court after which post-trial motions were filed and denied. Appeals filed by Mr. and Mrs. Martin, Showco and Recker have been consolidated for purposes of this appeal.

We begin our review with an examination of the trial court's instructions and conclude that the charge given to

the jury on causation was adequate. The trial court's decision to refuse Showco's requested jury instruction on the doctrine of assumption of the risk cannot be cited as error in the instant case.

■ Initially it is appropriate to note that the defense of assumption of the risk has been abolished by statute in certain types of cases. 77 P.S. § 41 provides in relevant part:

> In any action brought to recover damages for personal injury to an employe in the course of his employment, or for death resulting from such injury, it shall not be a defense—
>
> .    .    .    .    .
>
> (b) That the employe had assumed the risk of the injury

The facts indicate that Martin was employed by Recker. As an employer Recker had the statutory duty to obtain insurance to insure the payment of workmen's compensation benefits for those so entitled. Recker neglected to obtain compensation insurance, thus Martin was able to institute a suit for damages at law. Section 501 of the Workmen's Compensation Act provides that whenever "any employer fails to secure the payment of compensation under this act ... the injured employe or his dependents may proceed either under this act or in a suit for damages at law as provided by article II." 77 P.S. § 501. The reference in § 501 to article II of the Act applies to the above quoted § 41 which abolished the defense of assumption of the risk. Accordingly, Recker as the employer of Martin was not entitled to a charge that Martin assumed the risk of working on the ramp that evening.

To determine whether the provisions of the Workmen's Compensation Act including those abolishing the defense of assumption of the risk apply to the defendant Showco, it must be resolved whether Showco was an employer of Martin. On the one hand Showco seeks to have the jury charged that Martin assumed the risk of his working conditions, however as seen above such a charge would be inappropriate if Martin were an employee of Showco. On

the other hand Showco also argues in this appeal that the trial court erred when it failed to grant Showco leave to amend its New Matter to plead the workmen's compensation defense on the basis that Showco and Martin enjoyed an employer-employee relationship.[1]  Showco's attempt to argue in the alternative is not new to this area of the law. Nearly 60 years ago Mr. Justice Kephart wrote about a similar perplexing situation:

> This appeal by McDonald presents an oft recurring difficulty.  On the one hand we have persons before us, such as Levinson, endeavoring to escape the effect of the Compensation Act so that they will not be compelled to pay compensation or carry insurance, and, on the other hand, as here, when faced with liability at common law, they strive vigorously to come under the sheltering protection of the act.  Appellee is now endeavoring to the latter as a statutory employer.

*McDonald v. Levinson Steel Co.*, 302 Pa. 287, 291–292, 153 A. 424 (1930).

In an attempt to resolve the status of the relationship between Showco and Martin we must remain mindful that the question of whether the facts constitute an employment relationship for workmen's compensation purposes is a question of law.  *English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343, 1348 (1981).  For Showco to claim immunity under the Act it must be found to be either an "employer" of Martin as that term is defined in Section 21 of the Workmen's Compensation Act or what has been described as a "statutory employer" under Section 52 of the Act.

▮ Showco's position in the instant action could not be said to be that of a statutory employer.  Section 52 of the Act provides:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an

___

1.  I note however, even if Showco was found to be Martin's employer the record does not reflect whether Showco maintained the required workmen's compensation coverage.

assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52

As noted in previous court decisions this provision typically applies to the construction industry. It speaks to a situation where a general contractor subcontracts work to others, and the injured employee of the subcontractor seeks to bring an action in trespass against the general contractor. *Id.*, 286 Pa.Superior Ct. at 319, 428 A.2d at 1347, *citing, McDonald v. Levinson Steel, supra.* Although this Section is inapplicable to the instant factual situation, Showco may nevertheless seek to be an "employer" under the Act who has borrowed another's employee.

██ The Act defines the term "employer" as:

The term 'employer' as used in this act, is declared to by synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporation, the Commonwealth, and all governmental agencies created by it.

77 P.S. § 21

The term "employee" is defined in Section 22 of the Act. It provides in relevant part:

The term 'employe' as used in this act is declared to be synonymous with servant, and includes—

All natural persons who perform services for another for a valuable consideration *exclusive of persons whose employment is casual in character and not in the regular course of business of the employer* ...

77 P.S. § 22 (emphasis added).

Further, an employer may be deemed to be a "borrowing employer" for workmen's compensation purposes if the employee becomes subject to the direction and control of

the party to whom he or she is lent. *Ashman v. Sharon Steel Corp.,* 302 Pa.Super. 305, 448 A.2d 1054 (1982). A borrowing employer must control or have the right to control the borrowed employee not only with regard to the work to be done but also with regard to the manner in which it is performed. *English v. Lehigh County Authority, supra.*

■ Without reaching the question of Showco's control over Martin, we conclude that Martin could not be found to be Showco's employee since his services were casual and not in the regular course of Showco's business. *See: Dews v. Shmukler,* 199 Pa.Super. 417, 185 A.2d 607 (1962); *Davis v. City of Philadelphia,* 153 Pa.Super. 645, 35 A.2d 77 (1944). Showco is a lighting and sound company. It contracted with Linda Ronstadt to provide "sound reproduction and lighting and other related services, materials and facilities" for the Ronstadt tour. Incidental to this service Showco employees directed Recker's workers where to place the lighting and sound equipment in the trailers to insure their fit. before transportation to the next concert location. Showco was not in the business of loading and unloading trucks. The transportation of the equipment was handled by Clark Transfer in accordance with its contract with Linda Ronstadt. The loading of the equipment was not the responsibility of Showco. As per its contract agreement with Ms. Ronstadt, Diceasare–Engler arranged to have Recker's employees engage in the loading and unloading tasks.

■ The term casual denotes a fortuitous happening, an irregular occurrence which is occasional, incidental, temporary, haphazard, unplanned and with no fixed duration of time. *Dobrich v. Pittsburgh Terminal Coal Corporation,* 145 Pa.Super. 87, 91, 20 A.2d 898 (1941). The exclusion from coverage of persons whose work is casual and "not in the regular course of the business of the employer" is intended to distinguish the primary income-producing activity of an employer from other operations which, while perhaps necessary, are clearly incidental to the main function

of the business enterprise. *Industrial Valley Bank & Trust Co. v. Workmen's Compensation Appeal Bd.,* 16 Pa.Cmwlth. 420, 332 A.2d 882, 884 (1975). The facts of this case clearly show that Martin's services for Showco were casual in character and not in the regular course of Showco's business. Accordingly, Martin was not an employee of Showco and Showco was not permitted to come under the immunity of the Act. [See discussion infra] Since Showco was not Martin's employer, the abolition of the doctrine of assumption of the risk found in the Act at 77 P.S. § 41 is inapplicable. This finding, however, does not lead us to conclude that the trial court erred in refusing Showco's requested jury instruction on assumption of the risk.

This court has recently held that the doctrine of assumption of the risk is still a viable defense in certain factual situations notwithstanding the enactment of the Comparative Negligence Act, 42 Pa.C.S. § 7102. *Malinder v. Jenkins Elevator & Machine Co.,* 371 Pa.Super. 414, 538 A.2d 509 (1988). In *Malinder* the plaintiff was struck in the head by a freight elevator at his place of employment. The accident occurred when Malinder placed his head in an opening near the landing door in order to call to the elevator operator. Suit was brought by Malinder and his wife against Utica Insurance Company, which as the insurer of Malinder's employer was required to inspect the elevator twice a year, and Allied Enterprises, the company retained by Utica to conduct the inspections. A jury trial was held at the conclusion of which the jury was instructed on comparative negligence. A requested charge on the defense of assumption of the risk was refused. A verdict was returned against both defendants, however, the award was proportionately reduced as a result of the jury's determination that Malinder was 30% contributorily negligent. On appeal before an *en banc* panel of this court, the judgment was reversed and the case remanded for entry of a judgment n.o.v. in favor of Utica and against the Malin-

ders.[2]

The Superior Court reached its decision by comparing the facts in *Malinder* with the facts and holding found in *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). Therein, the Supreme Court was presented with a plaintiff who slipped and fell on ice in a parking lot. The court found that the location of the ice was both obvious and known to the plaintiff who nevertheless chose to encounter its slippery condition. The court remarked that the defendants, owners of the parking lot and chiropractic clinic which plaintiff was visiting, could have reasonably expected that the ice would have been avoided and accordingly, they owed no duty to warn of the ice on the parking lot. It was held that the doctrine of contributory negligence had no place in the case since there was no negligence on part of the defendants; they owed plaintiff no duty of care. In conclusion the court ruled that the doctrine of assumption of the risk operated as a matter of law to preclude plaintiff from recovering.

The *Malinder* court found the facts in *Carrender* to be "indistinguishable" and held that as in *Carrender* the doctrine of assumption of the risk must apply as a matter of law. 371 Pa.Superior Ct. at 424, 538 A.2d at 514. The court in *Malinder* noted "that in both cases, not only were the dangers unchanging, obvious, and known by the plaintiffs, but the plaintiffs' decisions to nevertheless accept the risk of the potential dangers were unreasonable and unnecessary." At 371 Pa.Superior Ct. 425, 538 A.2d 514. This observation was made based upon Malinder's testimony that he did not believe it was dangerous for him to place his head in the opening but that he knew he would be struck if the elevator was coming.

The facts of the case before this panel differ from those found in *Carrender* and *Malinder.* The dangerous condition of the ramp in this case was not obvious and known to Martin. *See: Malinder v. Jenkins Elevator & Machine*

**2.** Allied Enterprises did not participate in the appeal before the *en banc* panel.

*Co., supra,* 371 Pa.Superior Ct. at 514–515 n. 1, distinguishing *Ferencz v. Milie,* 517 Pa. 141, 535 A.2d 59 (1987). Martin's testimony reveals that he was unaware of the dangerous condition of the ramp. At trial he was asked by counsel:

Q.  You weren't concerned about the ramp falling off the trailer bed?

To which he responded:

A.  It never entered my mind, no.

N.T. 11–21–85 at 21.

On cross examination Martin was questioned:

Q.  Did you expect the ramp to be butted that evening down at the Stanley Theater?

He countered:

A.  I never gave it no thought. I had no qualms about the ramp being where it was at. I was six months into it [the job], and I was used to it [the ramp] being in and out.

N.T. 11–21–85 at 56.

■ Since Martin did not perceive that the ramp placement was dangerous, his decision to walk up the ramp that evening was not an acceptance of the risk of its potential danger. Under these circumstances it was appropriate for the court to refuse Showco's request for a charge of the defense of assumption of the risk.

Showco also objects in this appeal to the court's failure to instruct the jury on the immunity afforded employers under the Workmen's Compensation Act. Along with this allegation, Showco contends that it should have been permitted the opportunity to amend its answer to include this defense. We find no merit in these challenges presented by Showco.

As previously discussed, as a matter of law Showco was not the employer of Martin as those terms are defined under the Act. Therefore, the immunity afforded employers under the Act was not available to Showco and the trial court's decision refusing to permit Showco to amend its answer to raise this defense was not error. The Supreme Court's recent decision in *LeFlar v. Gulf Creek Industrial*

*Park No. 2*, 511 Pa. 574, 515 A.2d 875 (1986) does not mandate a different conclusion.

In *LeFlar* it was held that the Workmen's Compensation Act is not a defense which can be waived if not timely pled since the Act deprives common pleas courts of jurisdiction over common law actions in tort based on the alleged negligence of one's employer. *Id.*, 511 Pa. at 581, 515 A.2d at 879. In *LeFlar* the jury was instructed on the factors which are to be considered in determining whether the plaintiff was an independent contractor or an employee. The Supreme Court noted that:

> Because the jury was charged on two alternative theories which could give rise to liability for the Appellant, *one involving the decedent's status as an employee*, the other as an independent contractor, it cannot be determined from the verdict what jury determination was made as to his status.

*Id.*, 511 Pa. at 583, 515 A.2d at 880 (emphasis added). Because the court was unable to conclude based upon the jury's verdict whether it found the appellant to be the decedent's employer, the case was remanded to the trial court for a determination of the decedent's status.

In the instant case we are not presented with a similar situation. Showco could not be found to be the employer of Martin as a matter of law. Therefore, although an amendment to Showco's answer to plead the defense of the Act would not have been untimely, it would have been inappropriate in this case.

■ Further, contrary to the position taken by Showco, the trial court did not charge the jury in a manner which would permit it to conclude that Showco was Martin's employer. The jury was read the following instructions to which Showco objects:

> The plaintiff, William C. Martin, III, claims that Gilbert Recker, Barry Goldstein and Daniel Wilson were the servants of the defendant, SHOWCO, Inc., which is denied by SHOWCO. It is for you, the jury, to determine

from the evidence in this case the nature of the relationship, if any, then and there existing between the defendant, SHOWCO, and Gilbert Recker, Daniel Wilson and Barry Goldstein. If you find that said persons were the servants of the Defendant SHOWCO, and at the time of the occurrence were acting in furtherance of SHOWCO'S interest, activities, affairs or business, then Defendant SHOWCO, Inc. is liable for any negligent acts or omissions of said persons, Gilbert Recker, Barry Goldstein or Daniel Wilson.

Now, a person may be the servant of two masters not joint employers at one time as to one act provided that the services to one does not involve abandonment of the services to the other. If you find that Gilbert Recker, Barry Goldstein and Daniel Wilson were subject to the control of both defendants, Robert Recker, individually and d/b/a Recker Transfer Company, and SHOWCO, Inc. and that their acts were within the scope of their duties for both defendants and that they were serving the interest of both defendants, then you may find both defendants liable. If, however, you find that Gilbert Recker, Barry Goldstein and Daniel Wilson were under the sole control of one defendant and were serving the interest and purposes of that defendant only, then only that defendant alone can be held liable.

N.T. 12/10, 20/1985 at 54–57, 59–60.

These instructions do not seek from the jury a determination of whether Martin's status was that of an employee of Showco. Rather the court was charging the jury as to Showco's potential responsibility under traditional tort principles. Although Showco was not Martin's employer so as to bring Showco within the responsibility contemplated by the Workmen's Compensation Act, Showco did remain open to liability under traditional tort principles. *See: Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 448 A.2d 1054, 1060 (1982). Since we find that the court's charge was supported by the evidence and because it permitted the jury to determine whether Showco was liable based upon princi-

ples of negligence, we reject Showco's characterization of the court's charge as erroneous.

■ Further we must deny Showco's claim that the trial court erred in allowing the Martins' to cross-examine sound engineer Patrick Farrel. This issue is clearly without merit. The questions posed on cross-examination did not exceed the scope of the direct examination. Therefore, Showco's claim in this regard must be dismissed.

■ With regard to the matter of damages, the Martins complain that the trial court erred in precluding them from introducing evidence of past wage loss and medical expenses. After being presented with a motion in limine the trial court found that the requirements of the No–Fault Motor Vehicle Insurance Act [3] applied to the case and thus evidence of William Martin's lost wages and medical expenses could not be presented to the jury. The Martin's contest this ruling on the basis that William Martin was not entitled to No–Fault benefits since he was not a "victim" as that term is defined in the Act. Although it is appropriate to preclude a plaintiff from introducing at trial evidence of medical expenses or lost wages which are compensable under the Act, we agree with the Martins' contention that the facts herein indicate that these benefits were not available in this case since William Martin was not a "victim" under the Act.

A victim for purposes of recovery under the Act is defined as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.103. The statute further defines, in pertinent part, the phrase "maintenance or use" in the following manner:

Maintenance or use of a motor vehicle means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include:

·   ·      ·      ·      ·      ·

3. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 et seq., repealed by the act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

(B) Conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying entering into, or alighting from it.

40 P.S. § 1009.103

The fact that William Martin was engaged in the act of loading the vehicle is undisputed. The trial court also found that Mr. Martin was "occupying" the trailer while participating in the loading activity. We disagree. William Martin was not occupying, entering into or alighting from the vehicle when the accident occurred. The testimony elicited at trial revealed that Mr. Martin was standing with one foot on the doorjamb of the rear portion of the trailer and the other foot on the floor of the ramp leading to the trailer. The trailer was packed in such a manner that it was filled with boxes and crates up to the doorjamb. Mr. Martin maintained his position on the ramp while attempting to lift a box into a space near the top right side of the trailer. At that time the ramp slipped and Mr. Martin sustained his injuries.

These facts demonstrate that William Martin cannot be considered a victim for purposes of the No–Fault Act. There was no testimony taken at trial which would lead to the conclusion that Mr. Martin was attempting to enter the trailer when the accident occurred. Similarly William Martin was not occupying the trailer at the time of the accident. "The common meaning of the word 'occupy' is 'to fill up (a place or extent)' or 'to hold possession of.' " *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 420 A.2d 688, 689 (1980). The trailer was filled with crates and boxes up to the doorjamb. There was simply no room into which Mr. Martin could attempt to enter the trailer, nor could he occupy it. The term "alight" likewise does not describe Mr. Martin's activity at the crucial time. William Martin was not leaving the trailer or climbing down from it at the time the ramp fell. As stated in *Cerrato v. Holy Redeemer Hospital*, 342 Pa.Super. 551, 493 A.2d 728, 729 (1985):

... the Act defines the extent of an insured's coverage in terms of the period during which he is in physical contact

with a motor vehicle, that is, his entrance into, occupation of, and exit from it.... The legislature has also mandated, however that insurance coverage *not* extend to a separate act, that of 'loading or unloading a motor vehicle.'

The act of placing one foot on the doorjamb at the rear of the trailer is not sufficient contact in view of all the circumstances so as to constitute Mr. Martin's entrance into, occupation of or exit from the trailer. The facts state otherwise. Mr. Martin was merely undertaking the separate task of loading the trailer at the time of the accident. Accordingly, we find that the trial court incorrectly ruled that the No–Fault Act applied to the instant case and we award the Martins a new trial solely on the issue of damages.

Showco's final issue presented on appeal which questions the trial court's action in molding the verdict will not be addressed in this Opinion in light of our decision that a new trial on the issue of damages should be awarded. Likewise, the concerns of the defendant, Clark Transfer, that it may be wrongly subject to a new trial, do not require attention since the award of the new trial in this case is limited solely to the issue of damages.

POPOVICH, J., concurs in the result.

MONTGOMERY, J., files a concurring and dissenting opinion.

MONTGOMERY, Judge concurring and dissenting:

Although I concur in the majority's disposition of the issues raised by the Defendant–Appellants Showco and Recker, I dissent from that portion of the opinion which resolves the sole issue raised by the Martins in their cross-appeal. In my judgment, it is not necessary for us to reach this issue as the Martins do not wish to press the issue in the event the cross-appellants are denied relief.

In the Martins' brief, it is written: *"In the event a new trial is granted to Defendants, Plaintiffs request that they be granted a new trial* and be permitted to introduce

evidence of Plaintiff's wage loss and medical expenses." (Emphasis in original.) Also, in their conclusion at page 32 of their brief, the Martins write:

In the event this matter is remanded for a new trial as prayed for by Appellant, Showco, Inc., William C. Martin, III, and Louise Martin pray that they be awarded a new trial and that they be permitted to introduce evidence of Mr. Martin's wage loss and medical expense suffered as a result of the accident giving rise to the within action.

In my view, these statements are sufficiently specific for us not to reach the Martins' no-fault issue. This is especially true since the award of a new trial has been granted by the majority solely because of the resolution of the issue raised by the Martins. Forcing the Martins to retry their case, when they are perfectly willing to accept the verdict awarded by the jury, will expose them to further unnecessary delay and significant unwarranted pressure to settle their claims with the defendants. Additionally, I find no reason to increase the burden of an already over-burdened trial court docket.

I would, therefore, affirm the judgment entered on the verdict and dismiss the cross-appeal by the Martins.