IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twin Spruce Auto Repair, : 
                Petitioner : 
                   : 
         v. :   No. 723 C.D. 2019
                   :   Submitted: November 1, 2019
Workers' Compensation : 
Appeal Board (Tramontano), : 
               Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: July 20, 2020

        Twin Spruce Auto Repair petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted Joseph Tramontano (Claimant) compensation under the Workers' Compensation Act (Act).[1]  In doing so, the Board affirmed the determination of the Workers' Compensation Judge (WCJ) that at the time of his injury Claimant worked as an employee of Twin Spruce Auto Repair, not as an independent contractor, and that his employment also involved working as a farmhand at Twin Spruce Farm, where the automobile repair shop is located.  The Board concluded that Claimant's receipt of a payment from the putative employer's liability insurer for his personal injury did not constitute an election of remedies that foreclosed his pursuit of a workers' compensation claim against Twin Spruce Auto Repair.  Concluding that the Board erred, we reverse.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1–1041.4, 2501–2710.

## Background

Twin Spruce Auto Repair is a garage that services automobiles and does state inspections and emissions testing. Claimant is certified to conduct these tests.

On February 17, 2017, Claimant filed a claim petition seeking compensation for a back injury he sustained on June 8, 2015. The Bureau of Workers' Compensation informed Claimant that Twin Spruce Auto Repair did not have a workers' compensation insurance policy in effect on the date of his injury. Claimant then filed a claim petition against the Uninsured Employers Guaranty Fund and against Twin Spruce Auto Repair.

On August 23, 2017, the WCJ convened a hearing on Claimant's claim petition. Because Twin Spruce Auto Repair did not file a timely answer to the claim petition, Claimant filed a *Yellow Freight*[2] motion to deem all the allegations in the claim petition admitted. Twin Spruce Auto Repair responded that although factual averments in the claim petition may be considered admitted, Claimant still had the burden to prove that he was an employee of Twin Spruce Auto Repair and entitled to compensation. Further, Twin Spruce Auto Repair contested Claimant's assertion that he was an employee, as opposed to an independent contractor.

At the hearing, the Uninsured Employers Guaranty Fund moved to dismiss the claim petition. It argued that because Claimant pursued a claim for personal injury damages against Twin Spruce Farm's homeowners insurer for his 2015 injury, this proved that his injury was not work-related. It also argued that

---

[2] *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board*, 423 A.2d 1125 (Pa. Cmwlth. 1981).

2

the farm was not the same entity as Twin Spruce Auto Repair. Notes of Testimony (N.T.), 8/23/2017, at 22; Reproduced Record at 22 (R.R. ___).

In support of his claim petition, Claimant testified that he is 24 years of age and began to work for Twin Spruce Auto Repair in 2013 or 2014, probably in the month of June. He did automobile repairs, state inspections and emission tests. He testified that he also "helped out on the farm." *Id.* at 7; R.R. 7. Claimant testified he worked for Tammy and Bronson Miller, but principally Tammy. *Id.* at 12; R.R. 12.

Regarding his injury, Claimant testified that on June 8, 2015, one of the Millers asked him to help dislodge corn in a corncrib on the farm. While swinging a pickaxe, Claimant lost his footing and fell on his knees. Claimant stated that he experienced a sharp onset of pain in his back, which he described as a "very strong, stabbing, achy, burning feeling." *Id.* at 13; R.R. 13. He told Tammy Miller about the injury and sought treatment at an urgent care facility, which informed Claimant that he had pulled a muscle in his back and "to wait it out." *Id.*; R.R. 17. He returned to work after a few days and continued to work until shortly before his back surgery in October of 2016.

Claimant stated that he underwent surgery for "Carmen's Kyphosis" that gave him "a hard bend in his back." *Id.* at 17; R.R. 17. He explained that the surgeon "went in and had to re-break the vertebra, straighten them out, [and] put in 12-inch rods and 12 screws." *Id.* at 17; R.R. 17. Claimant testified that he continues to suffer pain as a consequence of the surgery. Claimant stated that his surgeon, Dr. Winer, attributed the pain to the fact that his vertebrae were not yet completely fused. Claimant continues to take Oxycodone and Hydro Morphine on a daily basis for his pain and, thus, cannot work.

3

The Uninsured Employers Guaranty Fund cross-examined Claimant about his juvenile spine deformity. The Fund also questioned Claimant about his medical record from WellSpan, where he was treated for back pain in August of 2016, when he fell off a ladder. Claimant testified that he "did not remember" telling the doctor that he fell off a ladder, as was recorded in his WellSpan medical record. *Id.* at 47; R.R. 47. Likewise, he could not remember falling off a ladder in August of 2016.

In opposition to the claim petition, Tammy Miller testified that she operated Twin Spruce Auto Repair, where Claimant worked as a mechanic. She took him on because her husband could no longer do all the work himself due to a heart condition. She testified that Claimant's work was limited to the garage, to which he had a key. Claimant set his own hours; was paid by the hour in cash; and was responsible for the payment of his own taxes. She testified that she hired him as an independent contractor. Tammy Miller testified that Twin Spruce Farm is owned by her husband, Bronson Miller, and her father-in-law, Gary Miller. The Millers lease their fields to other farmers, and they keep a few animals on the farm, such as chickens, steer and horses.

Tammy Miller testified that on the day in question, Claimant "offered" to help take down a corncrib. N.T., 9/13/2017, at 13; R.R. 85. While shoveling corn, Claimant hurt his back, although she did not witness the incident. She testified that Claimant told her that he "had pulled a muscle," and he was to take it easy and see a chiropractor. *Id.* at 14; R.R. 86. Claimant returned to work and continued to work until shortly before his back surgery. She did not have any further discussions with Claimant about his back until September 2016, when Claimant informed her that he needed surgery.

4

Tammy Miller testified that she notified Goodville Mutual Insurance Company, the farm's homeowners insurer, about Claimant's 2015 back injury. Goodville Mutual sent her a copy of the check it sent to Claimant to reimburse him for his "chiropractor appointments and some of his pain medications." *Id.* at 18; R.R. 90. By letter, Goodville Mutual informed her that the "case was closed." *Id.*

Terry Flickinger is a friend of Claimant and is engaged to the Millers' daughter. He described his habit of stopping by the garage to "hang out" with everybody there. *Id.* at 52; R.R. 124. He witnessed Claimant ask Tammy Miller to pay him on the basis of the hours Claimant had recorded on his phone. Flickinger stated that he helped feed the animals, as did Brenda Bull. He saw Claimant help with this task "[e]very once in a while." *Id.* at 57; R.R. 129.

Brenda Bull is a friend of Tammy Miller. She visits the farm a couple times a week and helps Tammy feed the bunnies and bottle-feed the calves. She testified that "if the garage was slow," Claimant might walk down the driveway to the barn. *Id.* at 65; R.R. 137. She explained that if they were feeding steer, Claimant might hand a bucket to Tammy. She described Claimant's participation as "[o]nce in a while." *Id.*

Finally, Bronson Miller testified. He stated that he did all the work at the garage until his heart surgery. Claimant was hired as a mechanic to inspect vehicles and to do the emissions testing. Bronson Miller also testified about the farm, which has been in the family for over 100 years. He explained that because the farm is enrolled in the Clean and Green program,[3] the garage can operate only

---

[3] The Clean and Green program provides a lower tax rate "for land devoted to farming and forest reserve purposes." *Maula v. Northampton County Division Assessment*, 149 A.3d 442, 445 (Pa. Cmwlth. 2016) (citing *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 505 (Pa. Cmwlth. 1998)).

5

20 hours a week. The program also limits the farm to 10 to 15 cows, which his wife and his father cared for during his illness. Others helped out, including Claimant "maybe once in a while." N.T., 12/1/2017, at 27; R.R. 181.

Bronson Miller testified that he does not employ any "farmhands." *Id.* at 9; R.R. 163. The chickens are free range, and the horses and cattle are pastured. He was adamant that Claimant was not paid "to feed the animals." *Id.* at 27; R.R. 181. He explained that he does not make any money from the animals and "can't afford to pay anybody[.]" *Id.* at 28; R.R. 182. He relied upon his wife, children and father to care for the animals when needed.

In rebuttal, Claimant testified that because Twin Spruce Auto Repair was open for limited hours, the Millers asked if he would be willing to do some work on the farm so that he could accrue at least 25 hours a week. Claimant stated that he did work on the farm "three to four times a week[.]" *Id.* at 35; R.R. 189.

On August 27, 2018, the WCJ approved a compromise and release agreement between Claimant and the Uninsured Employers Guaranty Fund. The agreement did not affect Claimant's claim against Twin Spruce Auto Repair.

On September 25, 2018, the WCJ granted Claimant's *Yellow Freight* motion and claim petition against Twin Spruce Auto Repair. The WCJ awarded Claimant disability compensation in the amount of $321.25 per week and ordered Twin Spruce Auto Repair to pay for Claimant's October 2016 surgery and to pay litigation costs of $4,023.57. He approved the 20% fee agreement with Claimant's counsel.

In his decision, the WCJ explained that the grant of Claimant's *Yellow Freight* motion established that Claimant sustained thoracic fractures on June 8, 2015. This left the following issues for disposition: the existence of an

6

employment relationship between Claimant and Twin Spruce Auto Repair; whether Claimant's injury occurred in the scope of employment; and the nature and extent of Claimant's disability.

On those issues, the WCJ found that Claimant was an employee of Twin Spruce Auto Repair and that Claimant's duties included working on the farm. In so finding, the WCJ credited Claimant's testimony as well as the testimony of Flickinger and Bull, who had seen Claimant feeding animals "once in a while." N.T., 9/13/2017, at 57, 65; R.R. 129, 137. The WCJ rejected the testimony of Tammy and Bronson Miller that Claimant had not been engaged to do farm chores. Twin Spruce Auto Repair appealed to the Board, and it affirmed the WCJ. Twin Spruce Auto Repair then petitioned for this Court's review.

On appeal,[4] Twin Spruce Auto Repair presents two issues for our consideration.[5] First, it argues that the claim petition is barred by Section 305(d) of the Act, 77 P.S. §501(d), because Claimant chose to pursue a claim against Goodville Mutual Insurance Company for the injuries that are the subject of his claim petition. Second, it argues that the Board erred in holding that Claimant was an employee at the time of injury because his work on the farm was casual in nature and not related to the business of Twin Spruce Auto Repair.

## Section 305(d) of the Act

In its first issue, Twin Spruce Auto Repair argues that Claimant is barred from filing a workers' compensation claim because he elected to pursue a

---

[4] This Court's review determines whether there has been a constitutional violation, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *Calex, Inc. v. Workers' Compensation Appeal Board (Vantaggi)*, 968 A.2d 822, 826 n.4 (Pa. Cmwlth. 2009).

[5] For purposes of this opinion, we have rearranged the order of Twin Spruce Auto Repair's issues on appeal.

7

claim for his injury against the farm's homeowners insurer. Section 305(d) of the Act, 77 P.S. §501(d), states that where an employee works for an uninsured employer, he may seek tort damages or workers' compensation for his injury. Twin Spruce Auto Repair contends that Claimant's election to pursue damages bars his pursuit of a claim for compensation under the Act. Claimant responds that he did not make an election because he did not file a civil action in a court of law.

Section 303(a) of the Act makes an employer's liability under the Act exclusive of common law actions by an insured employee. It states as follows:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. §481(a). Courts have explained this provision as

> a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action…. The 1974 change in the statutory formulation of the exclusivity principle reflects another, even larger change which the legislature made that same year: a change from an elective system of [workers'] compensation, as existed before, to one that is mandatory. Since, by the express language of section 303(a), the statutory compensation is "*in place of any and all other liability*" on the part of the employer for a worker's injury in the course of employment, the conclusion must follow that the section denies a worker any cause of action at law against his employer for such an injury. So strong is the principle of exclusivity we have held that it is a nonwaivable defense, even when not timely raised.

*Lozado v. Workers' Compensation Appeal Board (Dependable Concrete Work and Uninsured Employers Guaranty Fund)*, 123 A.3d 365, 372 (Pa. Cmwlth. 2015) (quoting *Lewis v. School District of Philadelphia*, 538 A.2d 862, 867 (Pa. 1988) (emphasis in original) (internal citations omitted)).

Where the employer is not insured for workers' compensation, the Act allows for the election of remedies under Section 305(d) of the Act, which states:

> When any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2,[6] *the injured employe or his dependents may proceed either under this act or in a suit for damages at law as provided by article II*.[7]

77 P.S. §501(d) (emphasis added). This provision gives the employee "an election either to proceed under the Act and accept its compensation schedules or to secure relief outside the Act by an action at law for damages against his employer." *Lozado*, 123 A.3d at 372 (quoting *Liberty by Liberty v. Adventure Shops, Inc.*, 641 A.2d 615, 616 (Pa. Super. 1994)). The election is exclusive.

---

[6] Added by the Act of December 5, 1974, P.L. 782.

[7] Article II is set forth at Section 201 of the Act, which states:

> In any action brought to recover damages for personal injury to an employe in the course of his employment, or for death resulting from such injury, *it shall not be a defense--*
>
> > (a) That the injury was caused in whole or in part by the negligence of a fellow employe; or
> >
> > (b) That the employe had assumed the risk of the injury; or
> >
> > (c) That the injury was caused in any degree by the negligence of such employe, unless it be established that the injury was caused by such employe's intoxication or by his reckless indifference to danger. The burden of proving such intoxication or reckless indifference to danger shall be upon the defendant, and the question shall be one of fact to be determined by the jury.

77 P.S. §41 (emphasis added).

In this case, Tammy Miller testified that she "called and reported" Claimant's injury to the farm's insurance company. N.T., 9/13/2017, at 17; R.R. 89. Miller provided all the information to Claimant's mother, who agreed to "deal with it all." *Id.* Tammy Miller testified as follows regarding a letter she received from the farm's insurance company:

> Goodville Mutual did send us a letter and a copy of the check stating that this is what they paid for, they [sic] paid for some chiropractor appointments and some of his pain medication, and just said that it's closed, the case was closed.

*Id.* at 18; R.R. 90. Claimant acknowledged that he received a payment from Goodville Mutual and that $2,293.39 sounded "about right." N.T., 8/23/2017, at 66; R.R. 66. He had expected $5,000. *Id.*

The Board concluded that Claimant did not "forfeit[] his workers' compensation claim" under Section 305(d) of the Act, 77 P.S. §501(d), because he did not initiate a civil action or retain counsel to pursue a civil action. Board Adjudication at 10. We reject the Board's narrow construction and application of Section 305(d) of the Act.

Section 305(d) of the Act authorizes a claimant to pursue a "payment of compensation" under the Act or "a suit for damages at law as provided by article II" if his employer is not insured for workers' compensation. 77 P.S. §501(d). This Court has explained that article II refers to the recovery of "damages for personal injury to an employee in the course of his employment." *Fritz v. Glen Mills School*, 894 A.2d 172, 177 (Pa. Cmwlth. 2006). Notably, if an injured employee pursues damages under article II, the putative employer may not defend on the basis that the employee assumed the risk or was negligent. 77 P.S. §41. Section 305(d) does not prescribe how the injured employee "may proceed" in a

10

"suit for damages." 77 P.S. §501(d). Contrary to the Board's conclusion, there is no requirement that an injured employee must retain counsel or file a lawsuit to effect the choice set forth in Section 305(d) of the Act.

As explained above, an employer can be subjected to traditional tort liability to its employee if it does not have workers' compensation insurance. *Tooey v. AK Steel Corporation*, 81 A.3d 851, 865 (Pa. 2013). A homeowners liability policy "cover[s] tort liability arising from the unforeseen and accidental losses to others[.]" Michael J. Brady, *The Impaired Property Exclusion: Finding a Path Through the Morass*, 63 Def. Couns. J. 380-81 (1996). When a claim is made under a liability policy by persons injured on the premises, the insurer can settle or defend claims on behalf of the policyholder. *Id.* In short, one way an injured plaintiff "may proceed" under Section 305(d) of the Act is by filing a claim with the tortfeasor's liability insurer.

In *Lozado*, 123 A.3d 365, this Court held Section 305(d) of the Act did not bar a claimant's workers' compensation claim, even though the claimant had filed a civil action. In *Lozado,* the claimant filed a praecipe for a writ of summons to toll the statute of limitations against his uninsured employer. Thereafter, the claimant sought compensation by filing a claim against the Uninsured Employers Guaranty Fund, which contended the claimant's litigation effort constituted an election of tort damages. We disagreed. We explained that "[t]he fact that [the claimant] commenced the action with a praecipe for writ of summons, delayed filing his complaint for 11 months, and requested that his tort action be stayed pending resolution of his workers' compensation shows that [the claimant's] first choice was not to recover tort damages. *[The claimant] had not*

11

*recovered from his civil action* and had taken no steps to bring the action to final disposition." *Lozado*, 123 A.3d at 372 (emphasis added).

Similarly, in *Brad Remodeling, LLC v. Workers' Compensation Appeal Board (Morris, Uninsured Employers' Guaranty Fund, State Workers' Insurance Fund, and ACS Claims Services)* (Pa. Cmwlth., No. 335 C.D. 2016, filed January 4, 2017) (unreported),[8] this Court held that because the claimant withdrew his civil action, he was not barred from seeking compensation from the Uninsured Employers Guaranty Fund.[9]

Here, unlike the claimants in *Lozado* and *Brad Remodeling,* Claimant elected to pursue damages against his putative employer by presenting a claim to the farm's insurer, Goodville Mutual. He accepted a payment of $2,293.39. Claimant did not withdraw his claim, as did the claimant in *Brad Remodeling.* The payment Claimant received constituted "damages" as that term is used in Section 305(d) of the Act. Indeed, Claimant's own testimony established that it was payment for his bodily injury. N.T., 8/23/2017, at 65-66; R.R. 65-66.

Claimant argues that reimbursement of his medical expenses by his employer's homeowners insurer did not constitute "a suit for damages." Claimant Brief at 6. Claimant contends that this payment was analogous to a health insurer paying his medical expenses after a workers' compensation carrier has denied the claim. Claimant offers neither evidence nor legal authority to support the view that

---

[8] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[9] In *Brad Remodeling*, the claimant was injured when the scaffolding on which he was standing collapsed. In June 2013, the claimant filed a complaint against the employer in the Court of Common Pleas of Philadelphia County. Then, in February 2014, the claimant filed a workers' compensation claim against the employer and the Uninsured Employers Guaranty Fund. In October 2014, the claimant discontinued his civil case.

the Goodville Mutual homeowners insurance policy provided "first party" coverage for his personal injury. Claimant has the burden of proof in a claim petition proceeding. *Rite Aid Corporation v. Workers' Compensation Appeal Board (Bennett)*, 709 A.2d 447, 449 (Pa. Cmwlth. 1998).

Liability insurance provides coverage to the insured (first party) for tort claims brought by another (third party) against the insured. *Pennsylvania Manufacturers' Association Insurance Company v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa. Super. 2003) ("The purpose and intent of a general liability insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking."). With respect to the Goodville Mutual homeowners insurance policy, the Millers were the first party, and Claimant was the third party. The record evidence establishes that Claimant "made a claim to an insurance policy for [his bodily] injuries[,]" N.T., 8/23/2017, at 65; R.R. 65, and that Goodville Mutual Insurance Company sent Claimant a check to cover his losses. N.T., 9/13/2017, at 18; R.R. 90.

Section 305(d) of the Act requires a claimant to choose either tort damages or workers' compensation when he suffers a work injury and his employer is uninsured. Claimant chose to pursue tort damages, and this choice foreclosed his opportunity to pursue a claim for workers' compensation for his 2015 back injury.

### Employment Relationship

In its second issue, Twin Spruce Auto Repair asserts that Claimant was not its employee at the time of injury because his work on the farm was, at most, casual in character. Claimant "did not have any set hours for time spent

13

working on the farm [and] the amount of time he spent feeding the animals would vary." Twin Spruce Auto Repair Brief at 8.

In a claim petition, the claimant bears the burden of proving all necessary elements to establish that he is entitled to benefits under the Act. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Among the elements the claimant must prove is that an employment relationship existed at the time of injury. *Northern Central Bank and Trust Company v. Workmen's Compensation Appeal Board (Kontz),* 489 A.2d 274, 276 (Pa. Cmwlth. 1985). Whether an employment relationship exists is a question of law reviewable by this court on a case-by-case basis. *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare)*, 595 A.2d 213, 216 (Pa. Cmwlth. 1991). The term "employe" is defined in Section 104 of the Act "to be synonymous with servant" and includes "[a]ll natural persons who perform services for another for a valuable consideration, exclusive of ... persons whose employment is casual in character and not in the regular course of the business of the employer[.]" 77 P.S. §22.

Our Supreme Court has defined "casual" employment as "work that 'comes about by chance, fortuitously, and for no fixed duration of time.'" *Brookhaven Baptist Church v. Workers' Compensation Appeal Board (Halvorson)*, 912 A.2d 770, 777 (Pa. 2006) (quoting *Blake v. Wilson*, 112 A. 126, 129 (Pa. 1920)). *See also Martin v. Recker*, 552 A.2d 668, 672 (Pa. Super. 1988) ("The term casual denotes a fortuitous happening, an irregular occurrence which is occasional, incidental, temporary, haphazard, unplanned and with no fixed duration of time."). Employment is not considered casual "if the need for the work recurs with a fair degree of frequency and regularity," even if the work performed "is not

14

continuous, but only for the performance of occasional jobs." *Cochrane v. William Penn Hotel*, 16 A.2d 43, 44-45 (Pa. 1940).

In his testimony, Claimant demonstrated a very poor memory for a 24-year-old. He could not remember what year he began working at Twin Spruce Auto Repair. He did not remember telling a physician at WellSpan that he fell off a ladder in August of 2016. He did not recall falling off a ladder and was unable to explain why the reported fall appeared in his WellSpan medical records. Claimant was taking opioids at the time of his testimony before the WCJ, and he has a criminal history for theft. Claimant admitted that he does not pay taxes to the state or federal government. Nevertheless, the WCJ fully credited Claimant's testimony.

Claimant testified that Twin Spruce Auto Repair is a "[m]echanic business" and not involved in the farming "business itself." N.T., 8/23/2017, at 31-32; R.R. 31-32. This Court has stated that "regular course of the business of the employer" refers "to the normal operations" that constitute the business. *Industrial Valley Bank & Trust Company v. Workmen's Compensation Appeal Board*, 332 A.2d 882, 885 (Pa. Cmwlth. 1975) (quoting *Callihan v. Montgomery*, 115 A. 889, 895 (Pa. 1922)). Claimant's credited testimony established that the regular course of business of Twin Spruce Auto Repair did not include bottle-feeding calves "once in a while." Whatever "work" Claimant did on the farm was not for Twin Spruce Auto Repair.

## Conclusion

The Board erred in holding that Claimant did not "forfeit[] his workers' compensation claim[]" under Section 305(d) of the Act, 77 P.S. §501(d), by electing to pursue a claim for damages against Twin Spruce Farm's

15

homeowners insurer. Board Adjudication, 5/14/2019, at 10. Section 305(d) did not, as the Board reasoned, require Claimant to file a civil action in a court of common pleas. The Board also erred in holding that Claimant's occasional help with the animals on Twin Spruce Farm related to the regular course of the business of his putative employer, Twin Spruce Auto Repair, which is in the business of maintaining automobiles. Accordingly, we reverse the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twin Spruce Auto Repair,               :
                          Petitioner  :
                                           :
                    v.  :    No. 723 C.D. 2019
                                           :
Workers' Compensation               :
Appeal Board (Tramontano),               :
                    Respondent  :

## **O R D E R**

AND NOW, this 20th day of July, 2020, the adjudication of the Workers' Compensation Appeal Board dated May 14, 2019, is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge